655 So.2d 1231 (1995)
HOOTERS OF AMERICA, INC., Hooters of Raleigh, Inc., and Hooters of Charlotte, Inc., Appellants,
v.
CAROLINA WINGS, INC., and Charlotte Wings, Inc., Appellees.
No. 93-1759.
District Court of Appeal of Florida, First District.
May 25, 1995.
Rehearing Denied June 29, 1995.
*1232 Robert P. Smith and Karen M. Peterson, Hopping, Boyd, Green & Sams, Tallahassee, for appellants.
Stephen D. Busey and Richard R. Thames, Smith, Hulsey & Busey, Jacksonville, for appellees.
LAWRENCE, Judge.
Hooters of America, Inc. (Hooters) appeals a final judgment for damages in the amount of $5,432,565, entered against it and in favor of Carolina Wings, Inc. (Carolina) pursuant to a default. We reverse in part and affirm in part.
Hooters and Carolina entered into a "Development Agreement" (Agreement) in 1988, whereby Carolina purchased "the right of first refusal to participate in the ownership of up to six (6) Hooters' System Restaurants" anywhere in the United States, except for certain defined geographic areas previously the subject of similar agreements with other partners. Hooters and Carolina opened two restaurants pursuant to the Agreement; one was located in Raleigh and the other in Charlotte (Charlotte I). Hooters offered Carolina an opportunity in 1990 and 1991, pursuant to the Agreement, to participate in four additional restaurants: Wilmington, North Carolina; Norcross, Georgia; and Columbia and Myrtle Beach, South Carolina. Carolina rejected these sites as inferior markets. From 1990 through 1992, Hooters opened, without joint venture partners, sixteen restaurants at various locations, including the four rejected by Carolina.
Hooters opened a second restaurant in Charlotte (Charlotte II) in September 1991, located less than seven miles from Charlotte I. Carolina was not offered an opportunity to participate in Charlotte II. Carolina viewed this as a breach of the Agreement and settlement negotiations ensued. Carolina filed suit in May 1992, when negotiations proved unsuccessful.
Carolina's complaint alleged in Count I that Hooters breached the Agreement by failing to offer participation in Charlotte II, when Carolina, at that point, had accepted participation in only two of the six restaurants provided for in the Agreement. Count II alleged that Hooters had breached a covenant not to compete contained in the Agreement, by opening Charlotte II within fifteen miles of Charlotte I.
Hooters and its counsel at that time failed to respond in any manner to the complaint. A default was entered. Hooters was subsequently furnished with an order setting the case for pretrial conference and for non-jury trial on the issue of damages. Again, Hooters failed to appear for the pretrial conference and the non-jury trial. Hooters also failed to respond to or participate in discovery requests and proceedings, including the deposition of its former president who was instrumental in negotiating the Agreement.
The trial court awarded Carolina damages in the total amount of $5,432,565, allocated as follows:
a) Charlotte II  $1,205,022;[1]

*1233 b) Harborplace  1,770,321;
c) St. Louis  1,546,973;
d) Gwinnett  910,249.
Hooters first appeared in the action within eleven days following entry of the final judgment, by employing Jacksonville counsel for the first time, who filed a timely motion for rehearing and a motion seeking to set aside the default and to vacate the final judgment. The trial court denied both motions following a hearing.
Hooters argues several theories upon which it contends that the trial court committed error. Hooters first claims excusable neglect for its failure to respond prior to the entry of a default. We will not burden the record by reciting the events which resulted in the entry of a default and an award of damages following the non-jury trial. Suffice it to say that it is clear that the trial judge was eminently correct in concluding that Hooters' conduct constituted gross negligence.
Hooters also contends error in the entry of a default because it was entitled to notice of the application for default. We conclude that the trial judge correctly determined that Hooters was not entitled to notice of the application for default pursuant to Rule 1.500(b), Florida Rules of Civil Procedure.
Hooters argues three additional grounds for relief, beyond the issue of whether a default was properly entered, which we restate and address as follows: (1) that Carolina so abused and misused the pleading and default process that the only remedy is to vacate the judgment and begin the entire process anew; (2) that Carolina was not entitled to a judgment for damages because the complaint failed to state a cause of action, in that the Agreement on its face contradicted the allegations in the complaint; and (3) that even if Count I stated a cause of action, the damages awarded were beyond the allegations pleaded in the complaint.[2]
As to the first ground, we are not persuaded that Carolina has so abused and misused the pleading and default process that the entire process should be set aside and begun anew. With respect to the second and third grounds, Carolina concedes that each ground involves a separate and distinct principle of law. Although similar in nature, failure to state a cause of action is not the same as recovering damages on a cause of action not pleaded at all. Hooters argues that the allegations in the complaint so conflicted with the plain language of the Agreement, which was incorporated by reference, that the complaint failed to state a cause of action for breach of contract. We agree with the trial judge who admitted extrinsic evidence on the subject, that the Agreement is sufficiently ambiguous as to render the issue a question of fact rather than a question of law. Neumann v. Brigman, 475 So.2d 1247 (Fla. 2d DCA 1985).
We do find merit however, in Hooters' third ground, as it relates to Count I, that damages may not be awarded which are not supported by the allegations contained in the complaint. An elementary principle of law provides that a party against whom a default has been properly entered admits the truth of the well-pleaded allegations of the complaint as to liability. It is also elementary that damages will be awarded only to the extent supported by the well-pleaded allegations of the complaint. A party may rely upon these principles. Henry P. Trawick, Jr., Florida Practice and Procedure § 25-4, at 381 (1994). This court in Freeman v. Freeman, 447 So.2d 963, 964 (1st DCA 1984) held:
A defendant against whom a default is entered admits only the well-pleaded facts and acquiesces only in the relief specifically prayed for. The award of relief not sought by the pleadings is error.
(Citation omitted.) To like effect are decisions in Tutwiler Cadillac, Inc. v. Brockett, 551 So.2d 1270 (1st DCA 1989); Board of Regents v. Stinson-Head, Inc., 504 So.2d 1374 (Fla. 4th DCA 1987); Bay Products Corp. v. Winters, 341 So.2d 240 (Fla. 3d DCA *1234 1976); see also Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388 (9th Cir.1988).
Carolina does not take issue with this principle of law. Rather, it argues that its pleading is adequate to support the award of damages for all four of the restaurants involved. We therefore address the adequacy of Count I of Carolina's complaint, the pertinent provisions of which are recited as follows:
5. On August 29, 1988, Hooters and Carolina Wings entered into a Development Agreement (the "Development Agreement") by which, in consideration for Carolina Wings' payment of $50,000, Hooters granted to Carolina Wings "the right of first refusal to participate in the ownership of up to six (6) Hooters' System Restaurants." A copy of the Development Agreement is attached as Exhibit A.
....
11. Pursuant to Paragraph 1 of the Development Agreement, Hooters is contractually obligated to offer to Carolina Wings a right of first refusal to participate in the ownership of up to six Hooters restaurants.
12. In accordance with this contractual obligation, Hooters has offered to Carolina Wings and Carolina Wings has accepted the opportunity to participate in the development and ownership of two restaurants, the First Charlotte Hooters and the Raleigh Hooters.
13. Subsequently, however, Hooters developed and operates, through its wholly owned subsidiary Hooters of Charlotte II, Inc., a competing Hooters restaurant in Charlotte, North Carolina (the "Second Charlotte Hooters") without offering to Carolina Wings the right to participate in its ownership.
14. Hooters' failure to offer to Carolina Wings the opportunity to joint venture with it in the ownership of the Second Charlotte Hooters constitutes a breach of the Development Agreement.
15. Carolina Wings is willing, ready and able to participate in the ownership and operation of the Second Charlotte Hooters.
....
18. Carolina Wings has been damaged by Hooters' breach of the Development Agreement in an amount exceeding $10,000.
The entire count is void of any mention or reference to the Hooters restaurants located at Harborplace, Gwinnett, or St. Louis. A single breach (Charlotte II) is alleged, and damages are claimed, founded only upon the same single breach. A fair and objective reading of Count I leads to the conclusion that the only restaurant at issue was Charlotte II. It follows that the only damages sought and allowable were those resulting from Hooters' alleged failure to permit Carolina's participation in Charlotte II. Because Carolina had the right to participate in only four additional restaurants (even under their view of the contract provisions), Hooters would have been required to guess as to the identity of the four additional restaurants, since Hooters opened an additional sixteen restaurants during this time, four of which were rejected by Carolina. Even then, for Carolina to have been entitled to damages under any circumstance, it would have had to affirmatively elect to participate in the four additional restaurants as a predicate to claiming a breach of the agreement. This necessary allegation is absent from the complaint. We thus conclude that Count I could support an award of damages for lost profits solely in connection with Charlotte II. Because Count I did not even purport to involve the restaurants at Harborplace, St. Louis, and Gwinnett, the final judgment awarding damages in this respect constituted a violation of Hooters' due process rights inherent in the elementary principle of law heretofore recited.
Carolina also contends that because Hooters failed to raise this issue before the trial court in its motions for rehearing and to set aside the default, it should be precluded from raising it for the first time on appeal, citing Abrams v. Paul, 453 So.2d 826 (1st DCA 1984). Abrams did not involve the issue of an award of damages beyond the pleadings. Rather, it was contended for the first time on appeal that the complaint failed to state a cause of action. No argument was *1235 made that the error was fundamental or jurisdictional. We find Abrams applicable, as it relates to the instant case and Hooters' due process claim, only for the generally accepted proposition that an issue may not be argued for the first time on appeal. However, the Abrams court also pointed out a well-recognized exception to the general rule:
[I]n the absence of jurisdictional or fundamental error, it is axiomatic that it is the function of the appellate court to review errors allegedly committed by trial courts, not to entertain for the first time on appeal issues which the complaining party could have, and should have, but did not, present to the trial court.
Abrams, 453 So.2d at 827.
Thus, the question to be resolved is whether Hooters' due process claim is fundamental. Our supreme court, in Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970), said: "`Fundamental error,' which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action." In analyzing further the issue of fundamental error, our supreme court said:
This Court has indicated that for error to be so fundamental that it may be urged on appeal, though not properly presented below, the error must amount to a denial of due process.
....
We agree with [the] observation that the doctrine of fundamental error should be applied only in the rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application.
Ray v. State, 403 So.2d 956, 960 (Fla. 1981) (citations omitted).
Our sister court further interpreted the holding in Sanford as follows:
The clearest teaching in Sanford is, thus, that it is an extremely rare exception to the usual rule of waiver of issues not argued below and is probably reserved only for the exceedingly unusual case where a substantial injustice would be otherwise perpetrated.
Moorman v. American Safety Equipment, 594 So.2d 795, 800 (Fla. 4th DCA 1992).
Adequate notice is a fundamental element of the right to due process. A litigant may choose to suffer a default, for whatever reason, and suffer the consequences. However, the litigant should be entitled to anticipate the consequences that reasonably flow from the allegations of the complaint. In the instant case, Hooters was on notice that upon default it would suffer damages only from its failure to offer Carolina an opportunity to participate in the ownership of Charlotte II. Any new admittee to the Bar who engages in civil trial practice learns quickly from his or her peers, or upon the first appearance before the trial court for entry of a judgment following default, that "you cannot get more than you asked for in the complaint". In the instant case, Carolina got $4,227,543 more than it asked for in the complaint. The matter of Harborplace, St. Louis and Gwinnett was not only absent from the complaint, but likewise was not recited in the findings of fact and conclusions of law, nor the final judgment entered by the trial court. We do not suggest that the trial court was required to make reference to the three restaurants in its rulings, but note that these circumstances support Hooters' contention that it did not raise the issue before the trial court because it was not aware that damages had been awarded for the three restaurants until preparation for this appeal had begun.
We hold that the award of damages for lost profits in connection with restaurants at Harborplace, St. Louis, and Gwinnett meets the test of fundamental error because the complaint failed to give notice that these restaurants were at issue. It should therefore be held only to suffer the consequences of a judgment for $1,205,022, related to Charlotte II, not $5,432,565, an amount which included all four restaurants.
For the reasons stated, we AFFIRM the judgment of the trial court to the extent that it awards damages for Charlotte II, but REVERSE and vacate the default and final judgment as it relates to Harborplace, St. Louis, and Gwinnett; and remand for proceedings consistent with this opinion.
*1236 BENTON, J., concurs.
ALLEN, J., concurs in part and dissents in part.
ALLEN, Judge, concurring in part and dissenting in part.
I would affirm the judgment and the post-judgment order because no error warranting reversal has been demonstrated. Because the argument was not presented to the trial court, I would not reach the appellant's contention that the judgment awards damages that were not pleaded. However, I would certify conflict with Cabral v. Diversified Servs., Inc., 560 So.2d 246 (Fla. 3d DCA 1990), as to this issue.
For the first time, the appellant now contends through new counsel that the trial court violated the appellant's due process rights by awarding damages for alleged breaches which were not pleaded by the appellee. This argument might have been presented to the trial court pursuant to a motion under Rule 1.540(b) at any time up to a full year following entry of the judgment. In fact, the appellant moved for relief under Rule 1.540(b), but this argument was never presented.
As indicated by the majority, a default judgment may only award such relief as is supported by the complaint. See Freeman v. Freeman, 447 So.2d 963 (Fla. 1st DCA 1984); Bay Products Corp. v. Winters, 341 So.2d 240 (Fla. 3d DCA 1976). But, as also recognized by the majority, in the absence of fundamental or jurisdictional error, we will not entertain an argument which should have been, but was not, presented to the trial court. Abrams v. Paul, 453 So.2d 826, 827 (Fla. 1st DCA 1984). In light of our decision in Abrams, I am unable to agree with the majority that the trial court committed fundamental error.
In Abrams, it was argued on appeal that the trial court had committed error in entering a default judgment upon a complaint which failed to state a cause of action. Considering the alleged error to be neither fundamental nor jurisdictional, we refused to consider the argument because it had not been presented to the trial court.
The majority apparently concludes, however, that the purported error here, allowing proof of damages beyond the allegations of a well-pleaded complaint, is somehow more egregious, and therefore more fundamental, than allowing proof of damages where a complaint completely fails to state any colorable claim whatsoever. I am unable to agree with this conclusion. Indeed, it seems apparent to me that an assertion that pleadings are insufficient to support an award of certain damages is nothing more or less than an argument that the complaint fails to state a cause of action (a legally recognized factual basis) upon which those damages might be awarded. I therefore believe this case to be controlled by Abrams.
Although I believe we are bound by our decision in Abrams, I recognize that it expresses the minority view with respect to appellate challenges to the sufficiency of a complaint where the argument has not been presented to the trial court. While a few cases such as United States v. One 1979 Rolls-Royce Corniche Convertible, 770 F.2d 713 (7th Cir.1985), and Katz v. Pierce, 732 P.2d 92 (Utah 1986), are in agreement with Abrams, the majority view appears to accord with the ruling in Cabral that the sufficiency of the pleadings to support a default judgment may be challenged for the first time on appeal. See e.g., Fehlhaber v. Fehlhaber, 681 F.2d 1015 (5th Cir.1982); Adcock v. Brakegate, Ltd., 247 Ill. App.3d 824, 187 Ill.Dec. 428, 617 N.E.2d 885 (1993); Thorp Loan & Thrift Co. v. Morse, 451 N.W.2d 361 (Minn. Ct. App. 1990); Caruso v. Krieger, 698 S.W.2d 760 (Tex. Ct. App. 1985); Southern Ariz. School for Boys, Inc. v. Chery, 119 Ariz. 277, 580 P.2d 738 (Ct.App. 1978); Columbia Valley Credit Exch., Inc. v. Lampson, 12 Wash. App. 952, 533 P.2d 152 (1975); Orkin Exterminating Co. v. Townsend, 136 Ga. App. 50, 220 S.E.2d 14 (1975); First Nat'l Bank v. Greene, 101 Ohio App. 267, 139 N.E.2d 664 (1956). Accordingly, in affirming the judgment and order under review, I would certify conflict with Cabral.
NOTES
[1] This amount includes $179,644 for breach of a covenant not to compete under Count II, alleging that Charlotte II unfairly competed with Charlotte I. Count III alleged the breach of a fiduciary duty, but the damages requested were duplicative of Count II.
[2] This issue was raised for the first time on appeal.