989 So.2d 32 (2008)
J.C.J., Appellant,
v.
HEART OF ADOPTIONS, INC., C.L.S., and Prospective Adoptive Parents, Appellees.
No. 2D07-2679.
District Court of Appeal of Florida, Second District.
July 2, 2008.
Rehearing Denied September 4, 2008.
*33 Allison M. Perry of Law Office of Allison M. Perry, P.A., Tampa; and Michael L. Lundy of Older & Lundy, Tampa, for Appellant.
Susan L. Stockham of Law Offices of Susan L. Stockham, P.A., Sarasota, for Amicus Curiae Concerned United Birthparents, in support of the Appellant.
Raymond T. Elligett, Jr. of Buell & Elligett, P.A., Tampa, and Jeanne T. Tate of Jeanne T. Tate, P.A., Tampa, for Appellee Heart of Adoptions, Inc.
Anthony B. Marchese, Tampa, for Appellees C.L.S. and Prospective Adoptive Parents.
LaROSE, Judge.
We review the termination of J.C.J.'s parental rights. Previously, in J.C.J. v. Heart of Adoptions, Inc. (In re Baby R.P.S.), 942 So.2d 906 (Fla. 2d DCA 2006), disapproved, Heart of Adoptions, Inc. v. J.A., 963 So.2d 189 (Fla.2007), we reversed the termination of J.C.J.'s parental rights and remanded to the trial court to rule on J.C.J.'s pending paternity action before addressing termination issues. On remand, the parties stipulated to J.C.J.'s paternity. The trial court ratified the stipulation and then proceeded with a lengthy termination hearing. The trial court entered a final judgment terminating J.C.J.'s parental rights, concluding that he had abandoned his child. We have jurisdiction. See Fla. R.App. P. 9.146. We affirm.
J.C.J. argues that the trial court failed to afford him due process protections and lacked clear and convincing evidence of abandonment. The thrust of J.C.J.'s due process argument, which he advances for the first time on appeal, is that the trial court failed to recognize J.C.J. as a parent and hear his request for custody, visitation, and support prior to considering the petition to terminate parental rights. As noted above, by the time the matter came before the trial court for final hearing, J.C.J.'s paternity was no longer an issue in dispute. Finding no fundamental error in the procedures employed by the trial court, we decline to address further this unpreserved argument. See Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970); Hooters of Am., Inc. v. Carolina Wings, Inc., 655 So.2d 1231, 1235 (Fla. 1st DCA 1995).
As for J.C.J.'s argument that no clear and convincing evidence established that he abandoned the child, we must, initially, provide some background. Shortly before the child's birth, the mother, C.L.S., consented to place the child for adoption through Heart of Adoptions (HOA). Shortly after the birth, HOA placed the child with the prospective adoptive parents.
C.L.S. had not previously disclosed to J.C.J. her pregnancy or intent to place the child for adoption. She disclosed J.C.J.'s name and address to HOA about three weeks before the child's birth. HOA promptly contacted J.C.J., who was not married to C.L.S. He would not consent to the adoption. HOA advised him, generally, of C.L.S.'s financial needs and provided a form that, among other matters, stated that failure to provide support for the birth mother during pregnancy and for the child after birth could be evidence of abandonment. *34 J.C.J. did not register with the putative father registry. See J.C.J., 942 So.2d at 907. He did, however, file a paternity action. There seems to be no question here that J.C.J. was a party whose consent was needed in order to proceed with the adoption. See J.A., 963 So.2d at 191. Thus, at the final hearing upon remand, the only issue remaining as to J.C.J. was whether his parental rights should be terminated because of his abandonment of the child. See Id. at 202 (citing §§ 63.089, 63.064(1), 63.032(1), Fla. Stat. (2005)).[1] Our review of the record reflects that J.C.J. had ample opportunity to challenge the termination of his rights.
As explained in J.A., 963 So.2d at 195, the legislature has found:
An unmarried biological father has an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood, both during the pregnancy and after the child's birth. The state has a compelling interest in requiring an unmarried biological father to demonstrate that commitment by providing appropriate medical care and financial support and by establishing legal paternity rights in accordance with the requirements of this chapter.
§ 63.022(1)(e), Fla. Stat. (2004).[2]
Additionally, an unmarried biological father of a child younger than six months of age when placed with adoptive parents, on service of notice of an intended adoption plan or a petition for termination of parental rights pending adoption, must
execute[ ] and file[ ] an affidavit in that proceeding stating that he is personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support and a contribution to the payment of living and medical expenses incurred for the mother's pregnancy and the child's birth in accordance with his ability to pay.
§ 63.062(2)(b)(2). Only if the father knew about the pregnancy must he have "paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his financial ability and when not prevented from doing so by the birth mother or person or authorized agency having lawful custody of the child." § 63.062(2)(b)(3). The notice of intended adoption plan served on the unmarried biological father "must specifically state that if the unmarried biological father desires to contest the adoption plan, he must file with the court, within 30 days after service, a verified response that contains a pledge of commitment to the child in substantial compliance with subparagraph (2)(b)2." § 63.062(3)(a).
A finding of abandonment resulting in a termination of parental rights must be based upon clear and convincing evidence that a parent ... has abandoned the child in accordance with the definition contained in s. 63.032(1). A finding of abandonment may be based upon *35 emotional abuse or a refusal to provide reasonable financial support, when able, to a birth mother during her pregnancy. If, in the opinion of the court, the efforts of a parent ... to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. In making this decision, the court may consider the conduct of a father toward the child's mother during her pregnancy.
§ 63.089(4). Section 63.032(1) defines abandoned, in relevant part, as "a situation in which the parent ... while being able, makes no provision for the child's support and makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities." Abandonment waives the biological father's right to oppose adoption. See § 63.064(1).
A natural parent's liberty interest in the care, custody, and management of his or her children is not absolute. See G.W.B. v. J.S.W. (In re Adoption of Baby E.A.W.), 658 So.2d 961, 966 (Fla.1995). Indeed, as between married and unwed fathers, "`the mere existence of a biological link does not merit equivalent constitutional protection.'" Id. (quoting Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)). The substantial due process protection attaches only when an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in raising his child. See id. (citing Lehr, 463 U.S. at 261, 103 S.Ct. 2985).
In re Adoption of Baby E.A.W. reiterated the definition of clear and convincing evidence as an "`intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.'" Id. at 967 (quoting In re Davey, 645 So.2d 398, 404 (Fla. 1994)). A determination of abandonment is fact-specific. Id. at 966. Accordingly, we do not reweigh testimony and evidence heard at trial; nor do we substitute our judgment for that of the trial court. See id. at 967 (holding substantial, competent record evidence supported the trial judge's finding of clear and convincing evidence that biological father abandoned his child; the father showed little interest in the birth mother or unborn child and provided no financial or emotional support); see also J.S. v. S.A., 912 So.2d 650 (Fla. 4th DCA 2005) (holding that record supported trial court's finding of abandonment where father delayed acknowledging paternity and child had been with adoptive parents for a significant period of time during which substantial bonding had occurred; father's actions fell short of showing a settled purpose to assume parental responsibilities for child); S.C. v. A.L.A., 736 So.2d 744 (Fla. 4th DCA 1999) (holding that father's lack of financial support and minimal contact and communication with child supported trial court's finding of abandonment).
J.C.J. first learned about the child three weeks prior to its birth. Neither at that time nor at any time over the course of the next several years did he provide any financial support for the child. Moreover, it does not appear that J.C.J. ever visited C.L.S. after hearing of her pregnancy or provide to her any emotional or financial support. The record shows that J.C.J. had the financial ability to provide for the child. Yet, J.C.J. never filed an affidavit of responsibility or family law financial affidavit until over two years after he filed his paternity action. J.C.J.'s claim that this was primarily due to the ongoing litigation *36 is unconvincing and does not overcome the requirement that he demonstrate a full commitment to the responsibilities of parenthood. The record also reflects the lack of contact and communication between J.C.J. and the child. J.C.J. never visited the child. The prospective adoptive parents offered J.C.J. visitation with the child, which he declined. They sent J.C.J. news of the child's development and provided their phone number, but J.C.J. failed to start a relationship with the child other than to send some small gifts from time to time. The child is now about four years old. J.C.J.'s failure to make any provision for the child's support and communicate with the child evinced a rejection of parental responsibilities by clear and convincing evidence. Because the record supports the trial court's finding of abandonment, we affirm the final judgment terminating J.C.J.'s parental rights.[3]
Affirmed.
KELLY and WALLACE, JJ., Concur.
NOTES
[1] HOA included abandonment as a ground for termination of J.C.J.'s parental rights in its original petition. See § 63.089(4), Fla. Stat. (2004). The trial court correctly rejected J.C.J.'s argument that language in our prior opinion, see J.C.J., 942 So.2d at 908, stating "none of the grounds specified in section 63.089(3) apply to J.C.J." became "law of the case" on the issue of abandonment. Our prior opinion refers to subsection (3) and does not affect the abandonment grounds alleged pursuant to subsection (4). In any event, J.C.J. does not advance a law of the case argument on appeal.
[2] J.A. addressed the 2005 statute; the wording here is identical.
[3] We disagree with the trial court's finding, under the facts of this case, that J.C.J.'s support obligation arose from the moment of conception. The trial court relied on a case with much different facts and involving a married father. The record here amply illustrates that J.C.J. had little, if any, ability to communicate with C.L.S. during her pregnancy and she did not disclose his name to HOA until three weeks before the child's birth. On this record, J.C.J.'s support obligation arose when he found out about the child and his failure to provide support from that time on still sufficiently shows abandonment.