994 So.2d 435 (2008)
Jossy MANSUR and Serge Mansur, as Personal Representative of the Estate of Alex Mansur, Appellants,
v.
PODHURST ORSECK, P.A., Katherine W. Ezell and Robert C. Josefsberg, Appellees.
No. 3D07-1723.
District Court of Appeal of Florida, Third District.
October 29, 2008.
Koch & Trushin and Bradley H. Trushin and Daniel L. Koch, Fort Lauderdale, for appellants.
Josephs Jack and Susan S. Lerner and Nicole I. Sieb, Miami, for appellees.
Before GERSTEN, C.J., and COPE and SALTER, JJ.
*436 SALTER, J.
Jossy Mansur and Serge Mansur, as Personal Representative of the Estate of Alex Mansur,[1] appeal a final summary judgment denying their legal malpractice claims against Podhurst Orseck, P.A., Katherine Ezell, and Robert Josefsberg. The question presented below and here is whether the appellants were at any time "clients" of the law firm and its partners. We conclude that genuine issues of fact were shown to exist regarding that question, and thus that the summary judgment should not have been entered.

Background
Ruben Mansur retained Podhurst Orseck to protect his interest, and the interest of three of his brothers (including the two appellants, Jossy and Alex Mansur), in certain Miami-Dade County real estate. The retention as counsel, fee arrangement, and scope of the engagement were not reduced to writing. Podhurst Orseck and its lawyers (collectively, "firm") had represented several members of the Mansur family over a course of some twenty years.
Through a network of offshore and local companies and a trust, the members of the Mansur family controlled a multi-million dollar piece of property on Dodge Island. Ruben and the three brothers for whom he spoke each had (through the intermediary entities) a one-eighth undivided interest in the property, and so did four other Mansur siblings who were estranged from Ruben's group. The latter group, however, was in control of the entity holding title to the real estate in question, so that Ruben and his group were essentially outsiders looking in. Initially, Ruben Mansur asked the firm to investigate a rumored sale of the property.
On April 14, 2003, the firm wrote to the property manager to request information about the sale. The letter began, "This firm represents Ruben Mansur," but also stated "I have also been advised that Messrs. Alex, Jossey [sic] and Miguel Mansur, each of whom similarly have 1/8th beneficial interests in the property, are also desirous of receiving this information."
The firm then found that the property was in foreclosure by a foreign bank, Interbank Aruba. The firm prepared a May 2003 memorandum for Ruben discussing legal options to address his desire "to be certain that he and his brothers Alex, Jossy and Miguel all receive their respective one-eighth shares of any proceeds of such sale." After consultation with Ruben, the firm filed a motion seeking leave for Ruben Mansur to intervene and a proposed cross-claim in the Interbank Aruba foreclosure action. The motion and proposed cross-claim stated that Ruben was acting "on behalf of himself and three brothers," but he did not designate appellants Alex or Jossy Mansur as movants, proposed intervenors, or cross-plaintiffs. Ruben Mansur's supporting affidavit stated that he was "authorized to represent my brothers Alex Elias Mansur, Jossy M. Mansur, and Miguel Jose Mansur, each of whom also are ultimate beneficiaries of one-eighth interests in the subject property." It is undisputed that Ruben Mansur had actual authority to represent the brothers.
In October 2003 a second foreclosure action was commenced against the Dodge Island property by TotalBank. TotalBank named Ruben Mansur, Alex Mansur, Jossy Mansur, and others as defendants,[2] and *437 served summonses on Ruben, Alex, Jossy, and Miguel in care of their "authorized agent," a firm attorney. The firm promptly advised counsel for TotalBank in a letter:
I can and do accept service for Ruben. Alex is recently deceased and I have no authority from his estate, nor do I know who his representatives are. While my client, Ruben Mansur, had verbal authority from his brothers to seek to intervene in the Interbank matter, it does not at this point extend to our representation in the TotalBank foreclosure action.
At Ruben's request, the firm prepared a memo which he could distribute to his three brothers to explain the options in both foreclosure cases. The memo summarized the status of the Interbank Aruba and TotalBank foreclosure cases, and it recited that Ruben Mansur had asked the firm to "write something that [Ruben] could send to Jossy, Miguel, and Alex's sons to explain the status of each case and the options available to us." (Emphasis added). Other parts of the memo clearly reflect communications to the appellants:
Counsel for TotalBank called to tell me that the title insurance company had picked up on the record of our motion to intervene in the Interbank suit and that for that reason they are requiring that TotalBank serve each of you with the complaint. She asked if we could accept service on your behalf. ....
Consequently, Ruben has given us permission to accept service on his behalf. We can do that for each of you or we can decline and leave them to try to serve you in Aruba. ....
After you have had an opportunity to review this and talk about it among yourselves, [we] will be happy to discuss it with you further if it would be helpful.
(Emphasis added).
At some point, the firm spoke with Alex Mansur by telephone about the litigation "to explain to him that in conjunction with Ruben after looking at all of the alternatives, we felt that the course of action we were taking was the best we could do and offered the best chance at seeing that there wasthat there were funds left from which they might ultimately recover their claimed interests."
By March of 2004, the corporate owner of the property was nearing a sale transaction that would satisfy both of the foreclosing lenders and produce additional proceeds. Interbank prepared a stipulation providing for the entry of an agreed form of final judgment of foreclosure if the sale did not eventuate by a deadline. The stipulation, which was sent to the firm for review, included a special consent provision, joinder, and signature lines for Ruben, Alex, Jossy, and Miguel Mansur. It stated:
Ruben Mansur, Alex Elias Mansur, Jossy Mansur and Miguel Jose Mansur (collectively, "the Mansurs") hereby join in this stipulation and expressly consent to its terms. The Mansurs acknowledge and stipulate that they have no claims or defenses against Interbank relating to the Mortgage, the Property, the Judgment, or this stipulation. The Mansurs further acknowledge and stipulate that the Mortgage is valid and that they have no claim individually to the Property.
The document also provided that all notices to the four brothers would be care of the law firm. Ruben and his three brothers *438 signed on their respective signature lines.
When the firm returned the stipulation to Interbank's attorney, the attorney acknowledged receipt in a letter that began, "I have received a copy of the stipulation executed by your Mansur clients." And finally, in June 2004, the corporate owner of the property closed the sale and paid off the Interbank and TotalBank mortgages without providing notice to the firm. A firm attorney sent a letter to the attorney for the corporate owner expressing concern that the corporate owner "does not intend to live up to its obligations to the four Mansur brothers we represent." (Emphasis added).
When efforts in Florida to collect any surplus proceeds from the sale failed, the appellants (and Ruben and Miguel Mansur) filed the circuit court action alleging professional negligence by the appellees.

Analysis
Establishment of the attorney-client relationshipand thus the attachment of the concomitant rights and duties of each side to the relationshipdoes not require a written agreement or evidence that fees have been paid or agreed upon.[3] The Florida Supreme Court has said that the test for an attorney-client relationship "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice. However, this subjective belief must ... be a reasonable one." The Fla. Bar v. Beach, 675 So.2d 106, 109 (Fla.1996) (citation and internal quotation marks omitted). See also Gonzalez v. Chillura, 892 So.2d 1075, 1077 (Fla. 2d DCA 2004); Dean v. Dean, 607 So.2d 494, 497 (Fla. 4th DCA 1992).
As summarized by the Restatement (Third) of the Law Governing Lawyers (2000):
§ 14. Formation Of A Client-Lawyer Relationship
A relationship of client and lawyer arises when:
(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
(a) the lawyer manifests to the person consent to do so; or
(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
(2) a tribunal with power to do so appoints the lawyer to provide the services.
Because this is an appeal from a summary judgment, we read the summary judgment record in the light most favorable to the appellants, as the nonmoving parties. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
In this case, the firm initially filed pleadings in the Interbank Aruba case on behalf of Ruben Mansur, stating that he was authorized to represent the interests of his three brothers in the matter. The firm then sent a memorandum describing the status of the two foreclosure cases in October 2003 and certain steps that might affect the interests of all four brothers in those cases (accepting service on their behalf, for example, so that they would become active defendants in the TotalBank case; or withdrawing the motion to intervene in the Interbank Aruba case, so that TotalBank would drop the appellants as *439 defendants). A few months later, the firm sent out the stipulation for settlement with provisions for the consent and joinder of the appellants, and providing that notices for the brothers would be sent to the firm. The appellants' belief that they were clients receiving legal advice is also corroborated by the letter from the firm to counsel for the property owner referring to that entity's "obligations to the four Mansur brothers we represent." That belief was also shared by the attorney for Interbank Aruba, who returned the document executed by "your Mansur clients" to the appellees.
Based on these facts in the circuit court record, the motion for summary judgment should not have been granted. The firm's own correspondence referred to "the four Mansur brothers we represent." Viewed in their totality, the documents support a conclusion that the test for the attorney-client relationship was satisfied, and that the firm undertook the representation of Ruben Mansur both on his own behalf and on behalf of the brothers he had the authority to represent.
Another way to consider the issue is to ask this question: would a court have sustained a claim of attorney-client privilege asserted by Alex or Jossy Mansur if they had been subpoenaed to produce a copy of the October 16, 2003, memo? Although the memo was addressed to Ruben Mansur, it was expressly written as something he "could send to Jossy, Miguel and Alex's sons to explain the status of each case and the options available to us." The memo invited each of the four Mansurs to make a decision to authorize or decline the acceptance of service, and the last paragraph anticipated that each of the brothers would review it, talk about it among themselves, and then call the appellees with any further questions. It seems clear that a claim of attorney-client privilege by Alex or Jossy Mansur would have been sustained as to that memorandum. See Samuel v. Shands Teaching Hosp. & Clinics, Inc., 984 So.2d 627, 628 (Fla. 1st DCA 2008).
We express no opinion regarding the merit, or lack of merit, of the appellants' claims of professional negligence. But on the narrow question considered below, whether or not the appellants have created a genuine issue regarding a material fact, we are required to reverse as to these two appellants. Moore, 475 So.2d at 668; Berkow v. Isaevna, 983 So.2d 1242 (Fla. 3d DCA 2008); Model Rules of Prof'l Conduct Scope ¶ 17 (2004) ("Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.").
Reversed and remanded for further proceedings.
NOTES
[1] One of the three co-plaintiffs below, Miguel Mansur, voluntarily dismissed his appeal here. Alex Mansur, another co-plaintiff below, passed away before this appeal began. References to "Alex Mansur" in this opinion are to his estate, when appropriate.
[2] TotalBank's pre-foreclosure title report picked up the recorded lis pendens filed by Ruben Mansur for himself and "on behalf of" the appellants, so TotalBank joined all of them.
[3] Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1281 (11th Cir.2004); Eggers v. Eggers, 776 So.2d 1096 (Fla. 5th DCA 2001).