PER CURIAM.
Home at Last Adoption Agency, Inc., (“the Adoption Agency”) appeals a final judgment dismissing its second amended petition to terminate the parental rights of Appellee, V.M., to his biological daughter. Because the trial court erroneously concluded that our prior opinion in this case precluded it from finding that Appellee had abandoned the child, we reverse.
The procedural and factual history of this case is unique. Appellee married G.C. (“the mother”) in October 2009, after learning that she was pregnant with his child. Two months later, Appellee was arrested for allegedly battering his new wife. The resulting aggravated battery charge was ultimately dismissed after the mother failed to appear for Appellee’s criminal court proceedings. The mother was successful, however, in obtaining an injunction for protection against Appellee.
The child was born in April 2010. Approximately one week after the child’s birth, the mother executed a consent for adoption, placing the child in the custody of the Adoption Agency. The affidavit provided to the Adoption Agency by the mother falsely represented that she was single. The child was placed with a prospective adoptive family in Massachusetts and has continued to reside there throughout these proceedings.
Although Appellee and the mother were married at the time the child was born, the Adoption Agency initially sent information to Appellee as though he were a putative unmarried father. In May 2010, the Adoption Agency filed a petition to terminate Appellee’s parental rights and to commit the child to the Adoption Agency for adoption. The petition was filed pursuant to chapter 63, Florida Statutes (2010), and alleged, inter alia, that Appellee had been served with a notice of intended adoption plan, but had failed to register with the Florida Putative Father Registry. Thus, the petition alleged, Appellee was deemed to have surrendered his parental rights.
After learning that Appellee was, in fact, married to the child’s mother, the Adoption Agency filed an amended petition in November 2010, alleging that Appellee had abandoned the child and had rejected his parental responsibilities by physically and/or mentally abusing the mother during the pregnancy. The trial court appointed counsel to represent Appellee and an answer was filed denying “each and every allegation” of the amended petition.
Trial was held on the termination petition on June 13, 2011. At the conclusion of the trial, the court verbally advised the parties that it was going to deny the amended petition because it could not find Appellee had abandoned the child. The trial court did believe, however, that the evidence supported a finding of dependency, stating:
There is nothing that’s been presented to me that would lead me to determine that this man has been [sic] abandoned the child, nor has there been some egregious activity that would cause me to terminate his parental rights. However, it is very appropriate for a dependency.
I would order at this point — again, not hearing what some witness in the hallway is going to say — or at this point, based on the evidence that’s been presented so far, that the father would be entitled to a case plan that would include psychological evaluation, Batterers Intervention, a parenting class, obviously follow the recommendations of the psychological evaluation, pay child support, have regular and routine visitation.
*1238 I cannot find good grounds to terminate his parental rights. It doesn’t meet the criteria. And I think the biggest problem is, the mother lied to you. But I cannot find abandonment.
Any other grounds you have listed and elicited here in testimony today, did not rise to the level of termination. They do rise to the level of dependency though.
After discussion with the parties, the trial court stated that the child would remain with the prospective adoptive parents in Massachusetts, but they would be required to bring the child to Florida for visitation with Appellee every other Saturday. The visitation would be supervised by the “Eckerd Program.” The court further expressed its desire not to place the child in foster care or involve the Department of Children and Families.
Appellee filed a motion for rehearing in which he argued that the court’s adjudication of the child as dependent was improper. In support, Appellee cited section 63.089(5), Florida Statutes (2010),[1] which provides:
If the court does not find by clear and convincing evidence that parental rights of a parent should be terminated pending adoption, the court must dismiss the petition and that parent’s parental rights that were the subject of such petition shall remain in full force under the law. The order must include written findings in support of the dismissal, including findings as to the criteria in subsection (4) if rejecting a claim of abandonment .... [T]he court must enter an order based on written findings providing for the placement of the minor.... Further proceedings, if any, regarding the minor must be brought in a separate custody action under chapter 61, a dependency action under chapter 39, or a paternity action under chapter 742.
At the hearing on Appellee’s motion, counsel for the Adoption Agency informed the trial court that since the conclusion of the trial six months earlier, Appellee had neither provided child support nor visited the child. Appellee’s counsel advised the court that no child support had been paid because there was no written order setting a support amount. Appellee’s counsel further stated that Appellee could not afford to pay for supervised visitation, but admitted that Appellee was not aware of the actual cost, nor had he sought a cost waiver.
The trial court then suggested that, given Appellee’s inaction during the previous six months, it would be appropriate for the Adoption Agency to file a second amended petition because “there may be additional grounds for termination at this time.” Specifically, the trial court stated:
Well, I’m going to order that Home at Last Adoption will be allowed to amend their pleadings to include a chapter 39 private petition for dependency and/or another termination of parental rights petition, whatever your choice is, however you choose to do that.
You could basically do both if you’d like or you could do the Chapter 39 petition for dependency. I have made my ruling as to the grounds for termination. My suggestion is there may be additional grounds for termination at this time.
I don’t know because I don’t know the details of why there’s been no support and no visitation in six months. You’ll have fifteen days to file your petition
[[Image here]]
*1239 The child will remain in the custody of Home at Last Adoption. The father will continue to have supervised visitation via the Eckerd Program because I’ve heard no substantial, competent, reliable evidence that he can’t afford it ....
On December 21, 2011, the trial court entered its written order entitled “Order of Adjudication and Findings of Fact, Order of Disposition and Case Plan Acceptance.” The order adjudicated the child dependent and denied the Adoption Agency’s request to terminate Appellee’s parental rights. The child was to remain in her current placement and the prospective adoptive parents were ordered to bring her to the Eckerd Program location, at their expense, for visitation with Appellee four hours every other Saturday. The visitation was to be supervised through the Eckerd Program with Appellee paying the cost of the supervision. Appellee was ordered to pay $200.00 per month in child support; to enter into a case plan with conditions that he have a psychiatric examination and counseling as recommended; complete parenting classes; and complete domestic violence/batterer’s intervention courses, at his expense. The court provided that there was no telephone contact with the child, but photographs may be requested.
The Adoption Agency filed a second amended petition for termination of parental rights the next day. In this pleading, the Adoption Agency alleged that Appellee had abandoned the child “as he had made no provision for the child’s support, little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibility.” The second amended petition also contained an allegation that Appellee had “failed to comply with any and all conditions ordered on June 13, 2011.” The second amended petition was personally served on Appellee as well as being served on his counsel.
Approximately three weeks after the Adoption Agency filed its second amended petition, Appellee filed a notice appealing the trial court’s December 21, 2011, order. During the pendency of that appeal, the parties proceeded to trial on the Adoption Agency’s second amended petition for termination of Appellee’s parental rights. At that trial, conducted on March 16, 2012, Appellee testified that he was living with his parents and working at the same job that he had at the time of the first trial, earning over $2,000 per month. He acknowledged that he had never paid child support, nor had he ever seen the child (who was nearly two years old by the time of the second trial). Indeed, despite being afforded the opportunity to visit the child pursuant to the trial court’s verbal directive on June 13, 2011, Appellee had not contacted the Eckerd Program about exercising his visitation rights until a few days before the second trial. The evidence further reflected that the prospective adoptive parents had provided the Adoption Agency with photographs of the child, but that Appellee had never contacted the Adoption Agency to receive these photographs. After the Adoption Agency rested its case, Appellee’s counsel stated that Ap-pellee was not going to call any witnesses and moved to dismiss the petition. The trial court requested memoranda of law from the parties and deferred ruling.
On July 24, 2012, while the ruling on the second trial was still under advisement, this court issued its opinion on the appeal from the first trial. V.M. v. Home at Last Adoption Agency, 93 So.3d 1112 (Fla. 5th DCA 2012). We affirmed the court’s denial of the petition to terminate Appellee’s parental rights. However, we held that the trial court erred in proceeding to adjudicate the child dependent because that *1240 action was not authorized in a chapter 63 proceeding. We observed that after finding that Appellee had not abandoned the child, the trial court was required to dismiss the petition:
Section 63.089(5) is clear and unambiguous. It required the court to dismiss the petition upon finding that [Appel-lee’s] parental rights should not be terminated pending adoption. The court had no choice but to dismiss the petition, leaving [Appellee’s] parental rights intact. The statute is clear that any dependency proceedings would have to be filed separately in a dependency action pursuant to chapter 39.... The lower court’s creation of what it called a “private dependency” proceeding was error.
V.M., 93 So.3d at 1115.
After the issuance of our mandate, the trial court ultimately entered a final judgment dismissing the second amended petition for termination. The trial court expressly found that Appellee had failed to pay child support or visit the child from the date of the child’s birth through the date of the second termination trial. However, the trial court then indicated its belief, that as a result of this court’s prior opinion, Appellee “was not obligated to comply with any case plan task, including support or visitation.” The judgment concluded with the paragraph:
ORDERED AND ADJUDGED that any requirement entered by the Court after the first trial is null and void and the Father is under no legal obligation to provide support or visit the minor child. Therefore, the Father has not abandoned the child as defined in section 63.032(1), Florida Statutes, and the case is hereby dismissed.
This court did not, as suggested by the trial court, hold that Appellee was “under no legal obligation to provide support or visit the minor child.” Rather, this court determined that the trial court could not order a chapter 39 case plan in a chapter 63 termination of parental rights proceeding. Appellee has an obligation, independent of any erroneously imposed case plan requirements, to support and maintain contact with his minor child. The undisputed evidence presented at the second trial reflected that for the child’s first twenty-three months of her life, Ap-pellee did not pay any child support, despite having the ability to do so, and did not attempt to visit the child, despite having the opportunity to do so. The evidence was clearly sufficient to survive Ap-pellee’s motion to dismiss and the trial court should have determined whether, given Appellee’s failure to support or visit the child, Appellee had “evince[d] an intent to reject parental responsibilities.”[2]
In his answer brief, Appellee contends that the Adoption Agency was “illegally” allowed to continue to prosecute this case by filing a second amended petition, given this court’s determination that the trial court should have dismissed the case after it found, at the conclusion of the first trial, that the Adoption Agency failed to prove abandonment. The record reflects *1241 that although Appellee objected to the “conversion” of the termination proceeding to a dependency proceeding, he did not object to the trial court permitting the adoption agency to file an amended petition rather than a new termination proceeding. Procedural irregularities to which no objection is made are waived. Mole v. First Fed. Sav. & Loan Ass’n, 674 So.2d 144, 145 (Fla. 5th DCA 1996); see also Williams v. Salem Free Will Baptist Church, 784 So.2d 1282 (Fla. 1st DCA 2001) (procedural error not timely raised in trial court is waived unless party asserting error can demonstrate such waiver would be denial of due process). Furthermore, to accept Appellee’s argument would needlessly put form over substance. The only apparent effect of the Adoption Agency’s filing of the second amended petition rather than a new petition is that it was not required to pay an additional filing fee. In the instant case, Appellee was personally served with the second amended petition and the case proceeded to trial in the same manner as if the Adoption Agency had filed a new case.
Appellee also argues that he never had legal custody of the child because custody was illegally given to the Adoption Agency and, accordingly, he was under no duty to pay support. We disagree. In J.C.J. v. Heart of Adoptions, Inc., 989 So.2d 32 (Fla. 2d DCA 2008), our sister court was confronted with a scenario similar to the one presented in this case. Based on the mother’s consent, Heart of Adoptions, Inc., had placed a minor child with prospective adoptive parents shortly after birth. The ensuing petition to terminate the father’s parental rights was litigated for several years. Indeed, the second trial on Heart of Adoptions, Inc.’s termination petition took place on remand after appeals that resulted in opinions from both the Second District Court of Appeal, 942 So.2d 906 (Fla. 2d DCA 2006), and the Florida Supreme Court, 963 So.2d 189 (Fla.2007).
The evidence presented at the second trial established that the father had never provided support for the child, despite having the financial ability to do so. J.C.J., 989 So.2d at 35. Furthermore, the father had never visited the child, despite being afforded the opportunity to do so by the prospective adoptive parents. Id. The trial court’s decision to terminate the father’s parental rights was affirmed. The Second District Court of Appeal found that the father’s claim that his failure to provide support for the child was primarily due to the ongoing litigation was “unconvincing.” Significantly, our sister court concluded that the existence of the ongoing litigation did not overcome the requirement that the father demonstrate full commitment to the responsibilities of parenthood. Id. at 35-36.
We similarly conclude that the placement of Appellee’s child with prospective adoptive parents did not relieve Appellee of his obligation to demonstrate his commitment to the responsibilities of parenthood. In determining whether Appellee’s efforts to support and communicate with his child were sufficient to evince a settled purpose to assume all parental duties, the trial court may, of course, consider the impact the child’s placement had on Appel-lee’s ability to visit the child or provide financial support.
We reverse the trial court’s dismissal of the adoption agency’s second amended petition for termination. On remand, the trial court is directed to reconsider the evidence in accordance with the holdings set forth in this opinion. Because the child is now three and one-half years old, the trial court is further directed to enter a final judgment on the Adoption Agency’s *1242 termination petition within forty-five days of the issuance of our mandate.
REVERSED and REMANDED.
EVANDER, COHEN and WALLIS, JJ., concur.

. The statute was amended, effective July 1, 2012; however, the relevant language remains the same in the current statute.

. “Abandoned” is defined in section 63.032(1) to mean:
a situation in which the parent or person having legal custody of a child, while being able, makes no provision for the child’s support and makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities. If, in the opinion of the court, the efforts of such parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. In making this decision, the court may consider the conduct of a father towards the child’s mother during her pregnancy.