ORFINGER, J.
E.P. and P.P., individually and on behalf of their minor child, M.P. ("Appellants"), appeal a final judgment dismissing with prejudice their second amended complaint, alleging professional negligence (legal malpractice) against attorney Barton Hogreve ("Appellee"). Appellants argue that contrary to the trial court's order, their second amended complaint sufficiently stated a cause of action. We agree and reverse.
This suit arose out of Appellee's alleged failure to properly handle the proceedings related to terminating the parental rights of M.P.'s biological father. According to their second amended complaint, Appellants retained the services of Home at Last Adoption Agency, Inc. (the "Agency") and Appellee in connection with the placement and eventual adoption of M.P. Shortly after birth, the Agency placed M.P. with Appellants in Massachusetts. At the time of the placement, the biological mother had falsely represented that she was single, when in fact, she was married to M.P.'s biological father. This interrupted the adoption because the biological father refused to consent to the adoption. As a result, the Agency, with Appellee's assistance, sought to terminate the biological father's rights, resulting in four years of litigation.[1] After the trial court denied the *1010 Agency's second amended termination petition against M.P.'s biological father, Appellants hired other trial and appellate counsel to continue the termination proceedings against M.P.'s biological father. Ultimately, with their new counsel's assistance, the trial court terminated the biological father's parental rights. That judgment was affirmed on appeal. V.M. v. Home at Last Adoption Agency, Inc., 145 So.3d 864 (Fla. 5th DCA 2014). Appellants were then able to successfully adopt M.P.
Although Appellants were ultimately successful in the adoption, they sued Appellee, among others, complaining that he negligently handled the termination proceedings. Appellee moved to dismiss, arguing, in part, that Appellants had not stated a cause of action for professional negligence because they were not in privity with Appellee. The trial court agreed and dismissed Appellants' professional negligence claim with prejudice.[2]
Our review of a trial court's order dismissing a complaint with prejudice is de novo. Dingle v. Dellinger, 134 So.3d 484, 487 (Fla. 5th DCA 2014). In assessing the adequacy of a complaint, we take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. Jordan v. Nienhuis, 203 So.3d 974, 976 (Fla. 5th DCA 2016) ; Ray Coudriet Builders, Inc. v. R.K. Edwards, Inc., 157 So.3d 484, 485 (Fla. 5th DCA 2015). We do not look beyond the complaint and its attachments when considering a dismissal motion. Mohan v. Orlando Health, Inc., 163 So.3d 1231, 1233 (Fla. 5th DCA 2015).
To properly state a cause of action against an attorney for professional negligence, three elements must be alleged: (1) the attorney's employment or privity with the plaintiff; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence as the proximate cause of any loss to the plaintiff. See Dingle, 134 So.3d at 487 ; Gresham v. Strickland, 784 So.2d 578, 580 (Fla. 4th DCA 2001). "An attorney's liability for professional negligence is generally limited to clients with whom the attorney shares privity of contract." Dingle, 134 So.3d at 487. "If the parties are not in privity, to bring a legal malpractice action, the plaintiff must be an intended third-party beneficiary of the lawyer's services." Id. at 487-88.
To establish the attorney's employment, it must be asserted that an attorney-client relationship existed with respect to the acts or omissions that form the basis of the legal malpractice claim. Kates v. Robinson, 786 So.2d 61, 64 (Fla. 4th DCA 2001). However, the establishment of the attorney-client relationship does not always require a written agreement or evidence that fees have been paid or agreed upon. Mansur v. Podhurst Orseck, P.A., 994 So.2d 435, 438 (Fla. 3d DCA 2008). In the absence of a formal agreement, the test for an attorney-client relationship "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested *1011 intention is to seek professional legal advice. However, this subjective belief must ... be a reasonable one." Id. (quoting The Fla. Bar v. Beach, 675 So.2d 106, 109 (Fla. 1996) ).
Here, Appellants alleged sufficient facts to demonstrate their reasonable belief that they were consulting with Appellee to obtain legal advice. Appellants alleged in their second amended complaint that they wrote to, telephoned, and met with Appellee seeking legal advice on the termination proceedings against M.P.'s biological father. According to the second amended complaint and its attachments, in his responses to Appellants, Appellee repeatedly referred to himself and Appellants as "we" and "us" and to the termination proceeding as "our case." Appellee also gave Appellants legal advice and counseled Appellants on the status of the legal proceedings, legal filings, and legal strategy and asked Appellants whether they wanted to appeal any adverse ruling in the termination proceedings. Likewise, in an email, Appellee seemingly acknowledged an attorney-client relationship with Appellants, stating "As for your request for me to CC everyone, as an attorney and with confidentiality issues I will send my emails/responses only to you and [the Agency], as I'm sure you can understand." Appellee also billed Appellants directly for his services and referred to Appellants as his "clients" in those billings. And, Appellee allegedly prepared and delivered to Appellants a "Legal Opinion Letter on Status of Termination of Parental Rights in Florida." As such, we conclude the second amended complaint sufficiently alleged an ongoing attorney-client relationship and that the legal malpractice action arose out of Appellee's legal services in the termination and related adoption proceedings.
Further, Appellants have also sufficiently alleged that they were intended third-party beneficiaries of the legal services agreement between Appellee and the Agency. The primary purpose of Appellee's professional relationship with the Agency was to secure M.P.'s adoptive placement into Appellants' family-i.e., a direct benefit for M.P and Appellants. "To assert a third-party beneficiary claim, the complaint must allege: (1) a contract; (2) an intent that the contract primarily and directly benefit the third party; (3) breach of the contract; and (4) resulting damages to the third party." Dingle, 134 So.3d at 488. In Florida, the rule of privity in professional negligence actions is relaxed in very narrow circumstances where it can be demonstrated that the intent of the client in engaging the services of the lawyer was to benefit a third party. See Angel, Cohen & Rogovin v. Oberon Inv., N.V., 512 So.2d 192, 194 (Fla. 1987) ("The only instances in Florida where this rule of privity has been relaxed is where it was the apparent intent of the client to benefit a third party.... Florida courts have refused to expand this exception to include incidental third-party beneficiaries."); Rushing v. Bosse, 652 So.2d 869, 873 (Fla. 4th DCA 1995) ("We do not read Oberon as creating an exception to the privity requirement limited solely to the area of will drafting."); see also Dingle, 134 So.3d at 491 ("While the general rule in Florida is that an attorney owes a duty of care only to his client and not to third parties, an attorney owes a duty to a third party if the attorney was hired for the purpose of benefitting a third party. Because the intended benefit rule requires the specific intent to benefit the third party, it is accepted that an attorney is not liable to the third party for malpractice alleged to have occurred during adversarial proceedings on the rationale that adversaries would never desire to benefit one another.") (citations omitted).
Appellants alleged sufficient facts to show that the contract between the Agency and Appellee was entered into "primarily" and "directly" to benefit M.P.
*1012 and them. The Agency contracted with Appellants to place M.P. with them for adoption and hired Appellee to facilitate the adoption by terminating the biological father's parental rights. In adoption proceedings, the intended beneficiary of the termination proceeding is the child to be adopted, and Appellants, as the adoptive parents, clearly intended to benefit M.P. through adoption. See Rushing, 652 So.2d at 873 (stating that child to be adopted was not only intended third party beneficiary of contract but defendants were attorneys for adoptive parents, "who evidently intended to benefit child by adopting her"); see also § 63.022, Fla. Stat. (2010) ("It is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life ...."). However, that does not mean that the child is the only intended beneficiary. In this case, Appellants sufficiently alleged that they were also the intended beneficiaries of the contract because the parties' post-contract actions established Appellee's intent to benefit Appellants and M.P. in successfully terminating the biological father's biological rights to allow Appellants to adopt M.P. See Dingle, 134 So.3d at 488 (explaining that pre-or post-contract actions may establish requisite intent).
Appellants have also plausibly alleged the other two basic elements of legal malpractice, i.e., Appellee neglected a reasonable duty to Appellants and his negligence proximately caused a loss to Appellants even though the adoption was eventually successful. See, e.g., Doe v. Hughes, Thorsness, Gantz, Powell & Brundin, 838 P.2d 804, 806-07 (Alaska 1992) (indicating that important part of attorney's duty to client is duty to advise client of action that client should take in given set of circumstances, and noting that although clients' adoption decree was upheld on appeal, challenge to it was "costly affair," a redressable harm); Laird v. Blacker, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 696 (1992) (noting that client sustains injury as soon as he or she is forced to incur costs pursuing appeal, and concluding that although appeal may correct judicial error and thus reduce client's damage, "appeal does not necessarily exonerate the attorney, nor does it extinguish the client's action against him for negligence in the conduct of trial"); Petrowsky v. Family Servs. of Decatur, 165 Ill.App.3d 32, 116 Ill.Dec. 42, 518 N.E.2d 664, 667 (1987) (explaining that adoption agency had implied duty to carry out terms of adoption agreement reasonably and in good faith, and even though plaintiffs were ultimately successful in adoption, adoption agency could be held liable for mental suffering caused by its mishandling of adoption).
For these reasons, we conclude the trial court erred in dismissing the professional negligence claim in Appellants' second amended complaint. We reverse this matter for reinstatement of this cause of action against Appellee.[3]
REVERSED and REMANDED.
BERGER and EISNAUGLE, JJ., concur.

The facts, involving the litigation that followed, are fully set out in Home at Last Adoption Agency, Inc. v. V.M., 126 So.3d 1236 (Fla. 5th DCA 2013).

Appellants also challenge the trial court's dismissal of their common law negligence claim without prejudice in their amended complaint. However, an original pleading is superseded by an amended pleading that does not indicate an intention to preserve any portion of the original pleading. Downtown Invs., Ltd. v. Segall, 551 So.2d 561, 562 (Fla. 3d DCA 1989). In this instance, the amended complaint was superseded by the second amended complaint, which failed to reassert or mention the negligence claim against Appellee. Hence, Appellants have abandoned that claim and it cannot be resurrected in this appeal. See Arthur v. Hillsborough Cty. Bd. of Criminal Justice, 588 So.2d 236, 237 (Fla. 2d DCA 1991).

Appellee argues that this Court can also affirm on tipsy coachman grounds-that the second amended complaint shows on its face that the action is barred by the two-year statute of limitations and the exhibits attached to the second amended complaint conflict with the allegations in the second amended complaint. Inasmuch as the trial court declined to dismiss on those grounds, we decline to do so as well. See generally HSBC Bank USA, Nat'l Ass'n v. Nelson, 246 So.3d 486, 489 (Fla. 2d DCA 2018) ("As an initial matter, we note that the trial court expressly declined to address this argument, and this court 'cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so.' ") (quoting Salazar v. Hometeam Pest Def., Inc., 230 So.3d 619, 622 (Fla. 2d DCA 2017) ).