EMAS, J.
Appellant, the plaintiff below, appeals an order dismissing with prejudice its second amended complaint. We review the trial court’s ruling de novo, Morin v. Fla. Power & Light Co., 963 So.2d 258 (Fla. 3d DCA 2007), and, accepting as true the well-pled allegations of the operative complaint, affirm in part and reverse in part.

I. INTRODUCTION

In 2003, Golden Gate Homes, LC (“Golden Gate”) retained the law firm of Levey Airan Brownstein Shevin Friedman Roen & Kelso, LLP (“Levey Airan”) to represent its interest in litigation against three companies: Golden Gate v. L & G Engineers (“L & G Litigation”); Golden Gate v. Smith, McLaughlin (“Smith Litigation”); and Golden Gate v. Caribbean Land Surveyors (“Caribbean Litigation”).[1]
During the course of the L & G Litigation and the Smith Litigation, Levey Airan experienced difficulty responding to the opposing parties’ discovery requests. Le-vey Airan asserts that this failure was the fault of Golden Gate’s principal, Herman Zingg (“Zingg”), who refused to provide all the documents requested. Golden Gate claims that it was Levey Airan’s failure to respond to the discovery requests that led to the problems that followed. In the latter part of 2006, Levey Airan withdrew from representation of Golden Gate in both the L & G Litigation and the Smith Litigation.
Those cases eventually were concluded and, in May 2008, Golden Gate filed a complaint (which was amended twice thereafter) alleging two counts of professional malpractice and one count of negligent supervision against two attorneys, Lewis J. Levey, Esq. (“Levey”) and Michelle DeBianchi (“DeBianchi”), and the law firm of Levey Filler Rodriguez Kelso & DeBianchi, LLP (“Levey Filler”), f/k/a Levey Airan Brownstein Shevin Friedman Roen & Kelso, LLP.[2] The discussion which follows summarizes the allegations of the complaint in the context of the two underlying lawsuits which form the basis for Golden Gate’s complaint: The Smith Litigation and the L & G Litigation.

II. SMITH LITIGATION

A. Background
The well-pled allegations of the complaint establish the following:
*278 The Smith Litigation was set for trial in January 2007. Despite a 2005 court order compelling responses to Smith’s interrogatories and requests for production, Golden Gate’s principal (Zingg) appeared at his deposition duces tecum more than a year later, on September 29, 2006, with a suitcase containing nearly nine thousand additional documents which had not been previously produced. Zingg also testified that there were other pertinent documents “scattered either in friends’ or family homes and abroad” which had not yet been provided to Smith. Based on this late production, the existence of additional un-produced documents, and a looming trial date, Smith filed a motion to strike the trial date and for sanctions.[3] Smith sought sanctions on the additional basis that Zingg had failed to review the produced documents in advance of the deposition, rendering the deposition itself largely futile. The court granted the motion to strike the trial date, but reserved ruling on the request for sanctions. Shortly thereafter, Levey Airan withdrew as counsel for Golden Gate, and Golden Gate hired a new attorney in December 2006. The new attorney was able to gather the remaining documents from Golden Gate, had them copied and produced to Smith, prompting the trial court to deny Smith’s renewed motion for sanctions. The trial court did, however, order Golden Gate to pay the costs associated with the document production-approximately $10,000. Golden Gate did not appeal this determination. The case was later settled by the parties.
Golden Gate alleged in its complaint for professional malpractice that appellees’ actions resulted in Golden Gate being assessed $10,000 in copying and production costs.
B. Discussion
We find that the trial court correctly determined, from the complaint and its attachments, that Golden Gate could not establish that appellees were responsible for the assessment of costs against Golden Gate in the Smith Litigation. Given the findings of the trial court in the Smith Litigation,[4] the Smith trial court correctly determined that Golden Gate was responsible for the delayed discovery and was responsible for the costs of copying the documents which Golden Gate (through its principal, Herman Zingg) failed to properly and timely produce to Smith. The trial court in the instant action therefore properly dismissed the complaint to the extent it alleged claims arising from the Smith Litigation.

III. L & G LITIGATION

A. Background
The well-pled allegations of the complaint establish the following timeline in the L & G Litigation:
November 2003: Golden Gate hires Le-vey Airan, Levey, and DeBianchi to represent its interest as the plaintiff in the L & G Litigation.
March H, 2006: Following L & G’s notice that the case is ready for trial, the trial court issues an order setting trial on July 10, 2006. The trial is later continued to November 27, 2006.
May 2006: Pursuant to the trial court’s Uniform Order, L & G files its witness and exhibit list. Golden Gate does not file any witness list or exhibit list.
*279 August 16, 2006: L & G serves Golden Gate with interrogatories and a request for production. Golden Gate does not respond timely or seek an extension of time to respond to the discovery.
September 25, 2006: L & G files an ex parte motion to compel Golden Gate to respond to the outstanding discovery.
September 28, 2006: The court enters an order compelling Golden Gate to respond to the outstanding discovery requests within fifteen days. Golden Gate does not file any response to the outstanding discovery requests.
October 26, 2006: Levey Airan moves to withdraw as counsel for Golden Gate.
October 30, 2006: The court grants Le-vey Airan’s motion to withdraw and, in light of the November 27, 2006, trial date, orders Golden Gate to obtain new counsel within fifteen days or face sanctions, including dismissal of its complaint.
November 6, 2006: New counsel files a motion on behalf of Golden Gate together with a conditional notice of appearance, stating that it would undertake representation of Golden Gate only if the court granted a continuance of the November 27th trial date.
November 14, 2006: Deadline for Golden Gate to obtain new counsel. No notice of appearance is filed by this date.
November 16, 2006: The trial court denies the motion for continuance (and therefore Golden Gate remains without counsel).
November 17, 2006: L & G moves to dismiss due to Golden Gate’s failure to obtain new counsel within the court-ordered fifteen-day time period.
November 22, 2006: The court grants L & G’s motion to dismiss, and enters an order dismissing the complaint without prejudice for failure to obtain new counsel.
December 12, 2006: Golden Gate retains new counsel and, twenty days after the trial court’s final order of dismissal, new counsel files a motion to reinstate the complaint, citing Golden Gate’s difficulty in obtaining new counsel as the reason for delay.
December 21, 2006: At the hearing on the motion for reinstatement of the complaint, Golden Gate’s new counsel argues that the statute of limitations has expired on its claims against L & G and that, absent a rfeinstatement of the complaint, its claims would be time-barred. Golden Gate also, argues that it should not be punished for Levey Airan’s failure to -file a witness and exhibit list. The trial court enters an order reinstating the complaint and resets the case for trial in March 2007.
January 16, 2007: At the hearing on L & G’s motion for reconsideration, the trial court vacates its December 21, 2006 order reinstating the complaint, concluding that it did not have jurisdiction to enter the reinstatement order. The trial court determines that Golden Gate’s motion for reinstatement was filed more than ten days after the final order of dismissal and was therefore untimely under Rule 1.530, Florida Rules of Civil Procedure. Further, the trial court finds that the motion for reinstatement did not set forth just cause or excusable neglect under Rule 1.540, Florida Rules of Civil Procedure, and therefore the motion reinstating the complaint should not have been granted pursuant to that rule. The trial court enters a final order dismissing Golden Gate’s complaint, and Golden Gate appealed. This Court affirmed the trial court’s order vacating the order of reinstatement. Golden Gate Homes, LC v. L & G Eng’g Servs., Inc., 974 So.2d 489 (Fla. 3d DCA 2008).
Thereafter, Golden Gate filed an action for legal malpractice seeking damages *280 from Levey Filler, f/k/a Levey Airan,[5] Le-vey, and DeBianchi, asserting that their actions during the L & G Litigation, together with their late withdrawal from the L & G Litigation, left Golden Gate without counsel who could come into the case and properly prepare for a trial that was less than thirty days away. Appellees moved to dismiss, contending that it was not their withdrawal from the case, but rather the independent, superseding actions of Golden Gate and its subsequent counsel that caused whatever losses Golden Gate claims to have suffered.
The trial court granted appellees’ motion to dismiss and, finding that it would be futile to permit Golden Gate a third opportunity to amend, entered the dismissal order with prejudice.
B. Discussion
Appellees contend that the actions of Golden Gate and its successor counsel, as described above, constitute intervening, superseding acts which, as a matter of law, break the chain of proximate causation and prohibit any claim that appellees’ conduct was the proximate cause of the losses suffered by Golden Gate.
While we offer no comment on the ultimate merits of Golden Gate’s claim, we do find that the issue of whether appellees were negligent, and if so, whether such negligence was the proximate cause of Golden Gate’s loss, cannot be made, as a matter of law, at this juncture of the case.
We first note that the fact that appellees had withdrawn from the case does not necessarily absolve them of any potential liability for subsequent events. Privity is not a requirement for a claim of professional negligence. Dadic v. Schneider, 722 So.2d 921 (Fla. 4th DCA 1999); Chipman v. Chonin, 597 So.2d 363 (Fla. 3d DCA 1992).
As the Florida Supreme Court observed in Law Office of David J. Stern, P.A. v. Security National Servicing Corp., 969 So.2d 962, 966 (Fla.2007), “a legal malpractice action has three elements: 1) the attorney’s employment; 2) the attorney’s neglect of a reasonable duty; and 3) the attorney’s negligence as the proximate cause of loss to the client.”
When ruling on a motion to dismiss for failure to state a cause of action, the trial court must “treat as true all of the ... complaint’s well-pleaded allegations, including those that incorporate attachments, and [should] look no further than the ... complaint and its attachments.” Morin, 963 So.2d at 260.
Treating as true the complaint’s well-pled allegations and incorporated attachments, we determine that there remain questions of fact whether appellees’ actions in the L & G Litigation (including the timing of their withdrawal from representation) constitute neglect of a legal duty and, if so, whether such negligence was the proximate cause of the loss to Golden Gate.
In Dadic, 722 So.2d at 922, plaintiffs retained Schneider to represent them-in a mechanic’s lien foreclosure. On the day trial was scheduled to begin, Schneider moved to withdraw from the case, citing an inability to have any meaningful communication with his clients and alleging a litany of abusive conduct by the clients toward counsel and others. At the hearing on the motion, plaintiffs agreed that Schneider should be permitted to withdraw and *281 plaintiffs represented to- the court they would represent themselves and that they were ready to proceed with the trial. The court permitted Schneider to withdraw, and plaintiffs proceeded to trial without counsel ten days later.
Following a directed verdict in favor of the other side, the Dadics sued Schneider for legal malpractice, alleging, inter alia, a failure to properly investigate the case, failure to adequately conduct discovery, and failure to prepare the case for trial. The trial court granted summary judgment on the malpractice claim. The Fourth District reversed:
We recognize that the attorney-client relationship here ended before the ultimate conclusion of the underlying lawsuit. However, while employment is an element, an attorney need not be in privity with the client throughout the entire course of the underlying action. Where the attorney-client relationship ends before its conclusion, the question is whether the attorney proximately caused the client’s damages.
Proximate cause may be considered a question of law where reasonable minds cannot differ. However, here, reasonable minds could differ as to this in the event it is determined that Schneider did not perform adequate discovery. In such event, the Dadics’ loss might be attributable in part to him notwithstanding their subsequent actions in the litigation. An issue of fact also exists as to whether the Dadics’ actions constituted an intervening superseding cause negating any possible liability on the part of Schneider.
Id. at 923-24 (citations omitted).
In Dadic, as here, counsel’s withdrawal was with the consent (or absence of objection) of the client. The issue in Dadic, as here, was whether the timing of the withdrawal, combined with the allegations of counsel’s inadequate discovery, investigation, and preparation, constitute the neglect of a reasonable duty and, if so, whether such neglect was the proximate cause of the resulting loss to the client. Dadic, 722 So.2d at 923.
We recognize that Dadics’ counsel withdrew on the very day trial was scheduled to begin and the Dadics thereafter represented themselves (although the trial court continued the case for ten days before commencing the trial). In the instant case, appellees withdrew twenty-six days before the scheduled trial. However, Golden Gate could not represent itself in the litigation.[6] As a result of Levey Air-an’s withdrawal, Golden Gate had fifteen days to find and hire an attorney who was ready, willing and able to take on. this three-year-old case and be prepared for trial eleven days later.. In addition, no witness list or exhibit list had been filed on behalf of Golden Gate at the time appellees withdrew.
Whether appellees neglected a reasonable duty and proximately caused Golden Gate’s loss (and whether the actions of Golden Gate and successor counsel were an intervening, superseding cause) are, at this stage, questions of fact arid not law. We conclude that Golden Gate pled a viable claim and the trial court erred in dismissing the complaint insofar as it alleges professional malpractice and negligence arising out of the L & G Litigation.

TV. LEVEY FILLER AS A PROPER PARTY

Finally, we determine that the trial court correctly dismissed Levey Filler as a *282 party to this action. Golden Gate acknowledged that it employed the law firm of Levey Airan in 2003 to represent it in the underlying litigation, but is suing Levey Filler, an entity which Golden Gate contends merely represents a name change from the Levey Airan law firm.
However, it was established that each of the entities has a separate corporate existence and each remains an active corporate entity.[7] Levey Filler was not even formed until 2007, after the date Le-vey Airan had withdrawn completely from, and was no longer representing Golden Gate in, the underlying litigation. The trial court determined that Levey Filler was not a proper party to this action, and we find no error in this determination. See Sure Snap Corp. v. Baena, 705 So.2d 46 (Fla. 3d DCA 1998).

V. CONCLUSION

We therefore reverse the trial court’s order insofar as it dismissed with prejudice that portion of the complaint alleging professional malpractice and negligence arising out of the L & G Litigation. We affirm in all other respects the trial court’s order, including that portion of the order dismissing Levey Filler as a party defendant.
Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

. Golden Gaté conceded that the order appealed from does not address the Caribbean Litigation, and that the Caribbean Litigation does not form a part of this appeal.

. Golden Gate contends that the two entities (Levey Filler and Levey Airan) are actually one and the same, and that the Levey Filler firm simply represents a change in firm name from the Levey Airan firm. As we discuss infra at IV, we find this contention to be without merit.

. Golden Gate attached Smith’s motion for sanctions, including the relevant excerpts of Zingg’s testimony, to the operative complaint.

. Golden Gate did not appeal the order assessing costs, and later settled the Smith Litigation.

. As discussed infra at IV, we find that the trial court correctly determined that Levey Filler is not a proper party to the complaint.

. As an artificial entity, Golden Gate could not represent itself in the litigation; it was required to be represented by counsel. Szteinbaum v. Kaes Inversiones y Valores, C.A., 476 So.2d 247 (Fla. 3d DCA 1985).

. Ordinarily the trial court may not look beyond the complaint and its attachments in determining, on a motion to dismiss, whether a plaintiff sued the wrong defendant. See Mancher v. Seminole Tribe of Fla., Inc., 708 So.2d 327 (Fla.1998). In this case, however, Golden Gate did not object to the evidence provided to and relied upon by the trial court in its determination. In addition, both parties acknowledged here and in the court below that Levey Airan and Levey Filler are separate and active entities.