FERNANDEZ, J.
Plaintiff Melissa Ann King appeals the trial court’s Order Dismissing defendants Baptist Hospital of Miami, Inc. and Baptist Hospital of Miami, Inc. d/b/a Baptist Children’s Hospital (collectively, Baptist Hospital), rendered final by the trial court’s order denying King’s motion for rehearing. We conclude that section 766.106, Florida Statute’s (2003), notice of intent to initiate litigation sent to Dr. William R. Thompson and Pediatric Surgical Group, PLLC was sufficient under the facts of this ease to impute notice to Baptist Hospital, and therefore reverse.
In May 2008, King sent by certified mail two formal notices pursuant to section 766.106, Florida Statutes (2003), informing Dr. William R. Thompson and Pediatric Surgical Group, PLLC (Pediatric Group) of her intent to initiate litigation for medical malpractice. The notices specified that they were in regard to services rendered by Dr. Thompson and others during King’s treatment at Baptist Hospital, including Pediatric Group’s agents, employees and apparent, agents. The treatment dates included surgical stays on January 19, 2005 through February 3, 2005 and April 6, 2006 through July 8, 2006.
In November 2009, King filed an amended complaint against defendants Pediatric Group, University of Miami d/b/a Miller School of Medicine and University of Miami (collectively, University of Miami), and Baptist Hospital of Miami, Inc. and Baptist Hospital of Miami, Inc. d/b/a Baptist Children’s Hospital (collectively, Baptist Hospital) related to treatment she received at Baptist Hospital from Dr. Thompson. In her amended complaint, King alleged that she complied with all the conditions precedent to the filing of the action as required in section 766.106. She also alleged the following legal relationships:
4. That at all times material hereto, William R. Thompson, M.D., was acting as an employee, agent, representative or apparent agent of PEDIATRIC SURGICAL GROUP, PLLC.
5. That at all times material hereto, William R. Thompson, M.D., was acting as an employee, agent, representative or apparent agent as of UNIVERSITY OF MIAMI.
6. That at all times material hereto, William R. Thompson, M.D., was acting as an employee, agent, representative or apparent agent as of UNIVERSITY OF MIAMI d/b/a MILLER SCHOOL OF MEDICINE.
7. That at all times material hereto, William R. Thompson, M.D., was acting as an employee, agent, representative or apparent agent as of BAPTIST HOSPITAL OF MIAMI, INC.
8. That at all times material hereto, William R. Thompson, M.D., was acting as an employee, agent, representative or apparent agent as of BAPTIST HOSPITAL OF MIAMI, INC. d/b/a BAPTIST CHILDREN’S HOSPITAL.
9. That at all times material hereto, PEDIATRIC SURGICAL GROUP, *41 PLLC, was a limited liability corporation licensed to do and doing business in the Miami-Dade County, Florida.
10. That at all times material hereto, UNIVERSITY OF MIAMI, was a Florida corporation licensed to do and doing business in the Miami-Dade County, Florida.
11. That at all times material hereto, UNIVERSITY OF MIAMI d/b/a MILLER SCHOOL OF MEDICINE, was a Florida corporation licensed to do and doing business in the Miami-Dade County, Florida.
12. That at all times material hereto, BAPTIST HOSPITAL OF MIAMI, INC., was a Florida corporation licensed to do and doing business in the Miami-Dade County, Florida.
13. That at all times material hereto, BAPTIST HOSPITAL OF MIAMI, INC. d/b/a BAPTIST CHILDREN’S HOSPITAL, was a Florida corporation licensed to do and doing business in the Miami-Dade County, Florida.
14. That at all times material hereto the UNIVERSITY OF MIAMI d/b/a MILLER SCHOOL OF MEDICINE and BAPTIST HOSPITAL, INC., were joint venturers to provide pediatric surgeons from the UNIVERSITY OF MIAMI’S School of Medicine, Department of Pediatric Surgery, to BAPTIST HOSPITAL OF MIAMI, INC., and BAPTIST HOSPITAL OF MIAMI, INC. d/b/a BAPTIST CHILDREN’S HOSPITAL, to develop and establish a similar department at Baptist Children’s Hospital.
15. That William R. Thompson, M.D., was one of those pediatric surgeons employed by the UNIVERSITY OF MIAMI d/b/a MILLER SCHOOL OF MEDICINE and contractually provided to BAPTIST HOSPITAL OF MIAMI, INC., BAPTIST HOSPITAL OF MIAMI, INC. d/b/a BAPTIST CHILDREN’S HOSPITAL, as part of the written agreement for establishing a pediatric surgical department at Baptist Children’s Hospital.
16.That the Defendants, UNIVERSITY OF MIAMI d/b/a MILLER SCHOOL OF MEDICINE and BAPTIST HOSPITAL OF MIAMI, INC., and BAPTIST HOSPITAL OF MIAMI, INC. d/b/a BAPTIST CHILDREN’S HOSPITAL, shared in the expenses, benefits, income, promotions and advertising of this joint venture of which THOMPSON, M.D., was a shared employee.
In count I, King sought damages for medical malpractice based upon Dr. Thompson’s care and treatment, alleging that Baptist Hospital, among others, was “vicariously responsible for the negligence of [Dr. Thompson] as a result of him being their employee, their agent, their apparent agent or an employee of their joint venture.” In count II, King alleged that Baptist Hospital and the University of Miami granted staff privileges to Dr. Thompson and Pediatric Group pursuant to a “financial and administrative agreement” (the joint venture agreement). King further alleged that the agreement made the parties contractually intertwined entities vicariously liable for Dr. Thompson’s medical malpractice. Specifically, King alleged that Pediatric Group was formed to facilitate the contractual agreement between Baptist Hospital and the University of Miami to create the department of pediatric surgery at Baptist Hospital resulting in a joint venture between Baptist Hospital and the University of Miami, whereby the entities shared profit, losses, facilities, promotional and advertising benefits and insurance revenue.
Baptist Hospital then moved to dismiss the amended complaint because it had not been directly served a section 766.106 let *42 ter of intent, arguing in part that there was no legal relationship between Pediatric Group and Baptist Hospital, thus pre-suit notice could not be imputed to Baptist Hospital pursuant to rule 1.650, Florida Rule of Civil Procedure. Baptist Hospital contended that no legal relationship existed because Pediatric Group was not a party to a contract or agreement between Baptist Hospital and the University of Miami and that the contract on which King relied for her complaint terminated prior to King’s treatment and before the notices were sent. Baptist Hospital made no arguments in regard to the notice served upon Dr. Thompson. In its motion to dismiss, Baptist Hospital admitted that the joint venture agreement was attached to the amended complaint.
At the hearing on the motion to dismiss, Baptist Hospital furthered the same argument and also asserted that the claim of a joint venture had not been properly pled. In response, King argued that Florida Rule of Civil Procedure 1.650(b)(1) permitted her to impute notice upon Dr. Thompson and Pediatric Group to Baptist Hospital and the University of Miami because of legal relationships between Dr. Thompson, Pediatric Group, Baptist Hospital and the University of Miami.
The trial court found that there was no legal relationship between Dr. Thompson, Pediatric Group, and the Baptist Hospital defendants, and granted the motion to dismiss. King moved for rehearing. She argued that the trial court should not have dismissed the complaint as to Baptist Hospital because the trial court’s factual finding that King failed to establish a legal relationship between Dr. Thompson or Pediatric Group and Baptist Hospital upon which presuit notice could be imputed to Baptist Hospital went beyond the four corners of the complaint. King argued that the complaint sufficiently alleged a legal relationship for notice to be imputed to Baptist so as to survive a motion to dismiss. Moreover, she argued, the joint venture agreement discussed at the hearing— and upon which the court relied to make its ruling — conclusively showed a legal relationship between Dr. Thompson, the University of Miami and Baptist Hospital. The court denied the motion for rehearing.
Section 766.106, Florida Statutes (2003) provides, in pertinent part:
(2) Presuit notice.—
(a) After completion of presuit investigation pursuant to s. 766.203(2) and pri- or to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, and copies of all of the medical records relied upon by the expert in signing the affidavit. The requirement of providing the list of known health care providers may not serve as grounds for imposing sanctions for failure to provide presuit discovery.
In addition, Florida Rule of Civil Procedure 1.650(b)(1) provides:
(b) Notice.
(1) Notice of intent to initiate litigation sent by certified mail to and received by any prospective defendant shall operate as notice to the person and any other prospective defendant who bears a legal relationship to the prospective defendant receiving the notice. The notice shall make the recipient a party to the proceeding under this rule.
*43 We conclude that pursuant to the statute and the rule, King pled a legal relationship sufficient to survive a motion to dismiss.
In considering a motion to dismiss, the allegations in a complaint should be taken as true without regard to the pleader’s ability to prove them. Winter v. Miami Beach Healthcare Group, Ltd., 917 So.2d 973, 974 (Fla. 3d DCA 2005). The court should look no further than the complaint and its attachments. Golden Gate Homes, LC v. Levey, 59 So.3d 275, 282 (Fla. 3d DCA 2011).
The record here supports King’s position in her amended complaint that she demonstrated a legal relationship under the joint venture agreement between Baptist Hospital and the University of Miami. King alleged in the trial court that Dr. Thompson acted as an employee, agent, representative or apparent agent of Baptist Hospital under the joint venture agreement between the University of Miami and Baptist Hospital.[1] King also alleged that the University of Miami and Baptist Hospital shared in the expenses, benefits, income, promotions, and advertising of the joint venture. The joint venture agreement further indicates that Dr. Thompson was Baptist’s Medical Director for its pediatric surgery program.
A joint venture is a legal relationship. Jackson-Shaw Co. v. Jacksonville Aviation Auth., 8 So.3d 1076, 1089 (Fla.2008). In order to create a joint venture, a contract must contain the following elements: 1) a community of interest in the performance of a common purpose; 2) joint control or right of control; 3) a joint proprietary interest in the subject matter; 4) a right to share in the profits; and 5) a duty to share in any losses which may be sustained. Id.
King’s amended complaint and joint venture agreement contain all of the elements to properly allege a joint venture between Baptist Hospital and the University of Miami in which Dr. Thompson actively participated. The joint venture agreement provided the requisite legal relationship between Baptist Hospital and Dr. Thompson so that notice to him constituted notice to Baptist Hospital. Dr. Thompson performed services and acted as Medical Director for Baptist Hospital’s pediatric surgery program under the agreement. In addition, he was a member of Baptist Children’s Hospital Executive Board from 2004-2009, was a member of the Pediatric Department Advisory Committee for Baptist Children’s Hospital from 2000-2009, and did elective surgery at Baptist Hospital outside the scope of the contract as well. All of this is evidence of a legal relationship, and at a minimum, raises a question of fact for the jury as to whether Dr. Thompson only had staff privileges or was something more. Price v. JFK Med. Ctr., Inc., 595 So.2d 202, 203 (Fla. 4th DCA 1992) (“[T]he relationship between hospital and doctor ... is often unclear and raises a question for the jury.”).
Accordingly, dismissal of the case was premature because presuit notice to Dr. Thompson was sufficient to impute notice upon Baptist Hospital. Under the complaint and the joint venture agreement, King demonstrated a legal relationship between Dr. Thompson and Baptist Hospital. See Kukral v. Mekras, 679 So.2d 278, 285 (Fla.1996).
*44 The Florida Supreme Court stated in Arch Plaza, Inc. v. Perpall, 947 So.2d 476, 478-79 (Fla. 3d DCA 2007), “Florida courts have consistently construed the medical malpractice pre-suit statutory scheme ‘liberally so as not to unduly restrict a Florida citizen’s constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses’.” Id. (quoting Kukral, 679 So.2d at 284).
We thus reverse the trial court’s Order Dismissing Defendants Baptist Hospital of Miami, Inc. and Baptist Hospital of Miami, Inc. d/b/a Baptist Children’s Hospital.
Reversed and remanded for further proceedings.

. The joint venture between the University of Miami and Baptist Hospital provided pediatric surgeons employed by the University of Miami’s School of Medicine, Department of Pediatric Surgery, to Baptist Hospital in order to develop and establish a similar department at Baptist Children's Hospital. Dr. Thompson was one of the pediatric surgeons contractually provided to Baptist Hospital as a shared employee.