PALMER, J.
In this medical malpractice lawsuit, Marc Mohan and Rohini Budhu (“Plaintiffs”) appeal the final dismissal order entered by the trial court against them on all of their claims against Orlando Health, Inc. (Orlando Health). Determining that *1233 Plaintiffs’ complaint states cognizable causes of action against Orlando Health, we reverse.[1]
Plaintiffs filed a medical malpractice lawsuit against Orlando Health, South Lake Hospital, Inc., Dr. Jorge Florin, and Dr. Karl Hagen. The complaint alleged that Hagen operated on Mohan at South Lake Hospital and, during the operation, mistakenly removed his ureter rather than his appendix.
The counts against Orlando Health were for direct liability, joint liability, and vicarious liability. Orlando Health moved to dismiss all counts, and the trial court granted the motion with prejudice and later entered a final judgment thereon.
Plaintiffs argue that the trial court reversibly erred by dismissing all counts of their complaint against Orlando Health, because the complaint stated viable causes of actions for direct liability, joint liability, and vicarious liability. We agree.
Appellate courts review de novo a trial court’s order dismissing a complaint. Dingle v. Dellinger, 134 So.3d 484, 487 (Fla. 5th DCA 2014). When reviewing a dismissal order, the appellate court must take all factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the pleader. Ray Coudriet Builders, Inc., v. R.K. Edwards, Inc., 157 So.3d 484 (Fla. 5th DCA 2015). The court cannot look further than the complaint and its attachments when considering a dismissal motion. King v. Baptist Hosp. of Miami, Inc., 87 So.3d 39, 43 (Fla. 3d DCA 2012).
In Count I, Plaintiffs alleged the following claim of direct liability for negligent credentialing:
NEGLIGENT CREDENTIALING BY DEFENDANT OH
[[Image here]]
30. At all times material hereto, defendant OH, by virtue of its assumption of South Lake Hospital’s governance as described herein, had the duty and responsibility to exercise reasonable care for the safety and quality of care, treatment, and services provided at South Lake Hospital to the citizens of this community including the plaintiffs MARK R. MOHAN and ROHINI BU-DHU. Further, defendant OH had the duty and responsibility to exercise reasonable care in providing oversight to the medical staffs recommendations to the hospital’s governance on the credentialing and re-credentialing of the medical staff physicians including HAGEN. This would necessarily include familiarization with the background and performance of any physician opting to apply, or re-apply for privileges at the hospital, including review of any/all disciplinary proceedings and adverse incidents reportedly involving the subject physician, and corresponding action in recommending rejection of, and/or in fact, rejecting a physician’s reapplication for privileges where such physician fails to meet minimum community standards.
Orlando Health moved to dismiss this count, arguing that the parties’ Pre-Or-ganizational Agreement and/or Management Agreement, which were attached as exhibits to the amended complaint, demonstrated “that South Lake, not Orlando Health, was solely responsible for all decisions related to the medical staff and credentialing.” As for the Pre-Organizational Agreement, Orlando Health cited to *1234 paragraph 7.6 which sets forth the following “Post-Closing Covenants”:
7.6 Operational Matters.
(a) South Lake Board of Directors. South Lake shall be responsible for the overall supervision and operation of the Hospital and for directing ORHS, as manager of the Hospital, as required by the Management Agreement. South Lake’s Board of Directors shall be responsible for all policies and corporate direction required by South Lake. Actions of the South Lake Board of Directors for the normal course of business shall require a majority vote of the combined directors appointed by SLMH and ORHS....
(emphasis added). Also, Orlando Health cited to paragraphs 2, 3(b), and 8(b) of the parties’ Management Agreement, which read:
2. Control By South Lake. Throughout the Term of this Agreement, South Lake’s Board of Directors shall exercise all authority and control over the business, policies, operation, and assets of the Hospital, and ORHS shall perform its duties in accordance with the policies, bylaws, and directives of South Lake. By entering into this Agreement with ORBS, South Lake does not delegate to ORHS any of the powers, duties and responsibilities vest-' ed in South Lake’s Board of Directors' by law or by South Lake’s Articles of Incorporation and Bylaws. South Lake shall communicate all policies and directives to ORHS. All medical and professional matters shall be the responsibility of South Lake and medical staff of the Hospital.
[[Image here]]
[3](b) Employees. South Lake, in consultation with ORHS, shall determine the number, qualifications, and duties of personnel employed at the Hospital. South Lake, in consultation with ORHS, shall. have authority to hire and discharge all employees of the Hospital, and such authority may be delegated to appropriate employees.
[[Image here]]
[8](b) Cooperation with Medical Staff. ORHS shall cooperate and maintain liaisons with the medical staff of the hospital and shall advise and assist the medical staff concerning procedural matters and concerning standards and guidelines on accreditation promulgated by the Joint Commission on Accreditation of Healthcare Organizations. However, medical, ethical, and professional matters, including control of and questions relating to the composition, qualifications, and responsibilities of the medical staff, shall be the responsibility of South Lake and the medical staff of the Hospital.
(emphasis added).
Plaintiffs argue that the provisions of the Pre-Organizational and Management Agreements do not conclusively establish that South Lake was solely responsible for the credentialing, but instead, the documents demonstrate that Orlando Health exercised “a great deal of control over the hospital’s operations, including oversight of the medical staff.” See generally Magnum Capital, LLC v. Carter & Associates, LLC, 905 So.2d 220, 221 (Fla. 1st DCA 2005) (explaining that only when documents attached to a complaint conclusively negate a claim can the pleadings be dismissed).
In the amended complaint, Plaintiffs averred, inter alia, that “defendant OH undertook to manage and operate South Lake Hospital in all material ways, including but not limited to risk management, quality assurance, credentialing oversight, and human resource department func *1235 tions.” They cited to the Management Agreement which states that “ORHS shall be responsible for all day-to-day management of the Hospital, including ... personnel (including selection, testing, training and education of personnel).” In that agreement, Orlando Health’s duties vis-a-vis' South Lake Hospital were stated as follows:
3. Duties of ORHS. South Lake hereby retains ORHS to manage and operate the Hospital in the name, for the account, and on behalf of South Lake. ORHS shall permit South Lake to integrate specific operations of the Hospital into the ORHS system as practical and appropriate, as mutually determined by South Lake and ORHS, with ORHS’s duties to include, as mutually determined to be practical and appropriate by ORBS and South Lake, provision of the following services, resources, consultations, and support in order to permit the Hospital to provide quality healthcare consistent with the policies and directives of the South Lake Board of Directors, the financial resources of the Hospital, the competitive marketplace and applicable laws:
(a) Operational Management. ORHS shall be responsible for all day-to-day management of the Hospital, including without limitation, annual budget and charges, data processing,' purchasing (including the purchasing of insurance on a group basis), warehousing, billing and collection, food, clinical, industrial engineering, laboratory, printing, communications, record center, personnel (including selection, testing, training and education of personnel), and other services as agreed between ORHS and South Lake.
(b) Employees. South Lake, in consultation with ORHS, shall determine the number, qualifications, and duties of personnel employed at the Hospital. South Lake, in consultation with ORHS, shall have authority to hire and discharge all employees of the Hospital, and such authority may be delegated to' appropriate employees. Unless otherwise agreed by ORHS and South Lake, employees employed at Hospital shall be employees of South Lake. ORHS and South Lake agree that the Chief Executive Officer of the Hospital (and other personnel as agreed in writing) shall be an ORHS Employee. Any decisions to hire or discharge the Chief Executive Officer or the Chief Financial Officer of the Hospital shall require separate approvals of the SLMH directors and the ORHS directors comprising South Lake’s Board of Directors.
(emphasis added). We conclude that the allegations set forth in Plaintiffs’ complaint, when coupled with the language contained in the parties’ Management Agreement, fail to conclusively establish that Orlando Health was not involved in any credentialing decisions issued by South Lake Hospital. As such, the trial court erred in dismissing Count I of Plaintiffs’ complaint.
The trial court further dismissed claims for joint liability based on' theories of partnership, purported partnership, joint venture, and joint enterprise. The court reasoned that a “cause of action based on a partnership, purported partnership, joint venture, or joint enterprise [could not survive,] as such a relationship between two non-profit corporations is a legal impossibility”. Plaintiffs challenge this ruling, asserting there is no legal support for the trial court’s “legal impossibility” ruling, and that the exhibits to their complaint do not conclusively establish that joint liability is not available in this case.
*1236 The amended complaint averred, in relevant part, that
[o]n or about April 10, 1995, defendant OH, along with South Lake Memorial Hospital, Inc. (SLMH), and the South Lake County Hospital District (the DISTRICT), entered into a partnership agreement, joint venture agreement, joint enterprise agreement, and/or joint ownership agreement (hereinafter the “joint enterprise”), for the operation of a pre-existing hospital facility known as South Lake Hospital, previously being operated by SLMH and the DISTRICT. The joint enterprise included the formation of a newly organized corporate entity now known as defendant SLHI, whereby the partners, joint venturers, and/or joint owners, placed themselves in a position to jointly and equally control such corporate entity.
[[Image here]]
At all times material hereto, defendant OH purported to the public to be a partner in the ownership, operation, and use of the hospital known as South Lake Hospital, by claiming such status on the Internet, its website, in print ads, television, radio, and in the use of its logos on buildings and uniforms utilized in its operations.
The counts at issue read, in pertinent part, as follows:
PARTNER LIABILITY OF DEFENDANT OH FOR THE NEGLIGENT ACTS OF THE PARTNERSHIP
[[Image here]]
By virtue of entering into a partnership agreement with SLMH and the DISTRICT, and by virtue of its status as a partner of such partnership, defendant OH is jointly and severally obligated for the tortious acts of the partnership, whether such torts were committed by either OH’s employees, SLMH’s employees, or the DISTRICT’S employees, or anyone employed under their control, or right to control, pursuant to Florida’s Revised Uniform Partnership Act of 1995, § 620.8306 Fla. Stat.
[[Image here]]
PURPORTED PARTNER LIABILITY OF DEFENDANT OH FOR THE NEGLIGENT ACTS OF THE PURPORTED PARTNER
[[Image here]]
By virtue of purporting to be a partner in the ownership, operation, and use of South Lake Hospital as alleged in detail within paragraphs 10 and 17 herein, and by virtue of the detrimental reliance by plaintiffs MARK R. MORAN and his wife ROHINI BUDHU as alleged in detail within paragraph 18 herein, defendant OH is jointly and severally obligated for the tortious acts of the purported partnership.
[[Image here]]
JOINT VENTURER LIABILITY OF DEFENDANT OH FOR THE NEGLIGENT ACTS OF THE JOINT VEN-TURERS
[[Image here]]
By virtue of entering into a joint venture agreement with SLMH and the DISTRICT, defendant OH is jointly and severally obligated for the tortious acts of the joint venturers, whether such torts were committed by either OH’s employees, SLMH’s employees, or the DISTRICT’S employees, or anyone employed under their control or right to control.
[[Image here]]
JOINT ENTERPRISE LIABILITY OF DEFENDANT OH FOR THE NEGLIGENT ACTS OF THE JOINT ENTERPRISERS
[[Image here]]
*1237 By virtue of entering into a joint enterprise agreement with SLMH and the DISTRICT. Defendant OH is jointly and severally obligated for the tortious acts of the joint enterprisers, whether such torts were committed by either OH’s employees, SLMH’s employees, or the DISTRICT’S employees, or anyone employed under their control, or right to control.
Orlando Health concedes that the trial court’s ruling was erroneous, but suggests that we should affirm this ruling based on the tipsy coachman doctrine. See Taylor v. State, 146 So.3d 113 (Fla. 5th DCA 2014) (explaining that, under the tipsy coachman doctrine, if a trial court reaches the right result but for the wrong reasons, the ruling will be upheld if there is any basis which would support the judgment in the record). We reject this suggestion as meritless because the exhibits attached to the amended complaint include copies of documents which support Plaintiffs’ joint liability allegations.
In that regard, the exhibits attached to the amended complaint include a copy of a non-compete agreement which states:
COVENANT NOT TO COMPETE AGREEMENT
Background. South Lake Hospital, Inc. (“South Lake”) was formed as a corporation jointly controlled by SLMH and ORHS to own and operate hospital facilities known as South Lake Memorial Hospital, initially located at 847 Eighth Street, Clermont, Florida 34711 (the “Hospital”) and to construct; own and operate a new replacement hospital on land leased to South Lake, to be known as South Lake Hospital — a Partner of Orlando Regional Healthcare System.
(emphasis added). The exhibits also include a lease agreement in which it is stated that South Lake Hospital is jointly owned, operated, and controlled by Orlando Health:
AGREEMENT OF LEASE
THIS AGREEMENT OF LEASE (the “Lease”) IS MADE AS OF October 1, 1995, by SOUTH LAKE MEMORIAL HOSPITAL, INC. AND SOUTH LAKE COUNTY HOSPITAL DISTRICT (collectively referred to as “Landlord”), and SOUTH LAKE HOSPITAL, INC. (“Tenant”)....
WHEREAS, Tenant was formed as a not-for-profit corporation jointly controlled by Landlord and Orlando Regional Healthcare System, Inc. (“ORHS”) to own and operate hospital facilities known as South Lake Memorial Hospital .... and to construct, own, and operate a new replacement hospital on vacant land.
(emphasis added). Thus, at least two corporate documents contained in Plaintiffs’ exhibits to their amended complaint purport to establish that South Lake Hospital was formed as a corporation jointly owned, operated, and/or controlled by Orlando Health. As such, Orlando Health is unable to succeed on its tipsy coachman theory because it has failed to sustain its burden of proving that the exhibits to the amended complaint conclusively demonstrate that the relationship between South Lake Hospital and Orlando Health was neither a partnership nor a joint venture.
Count IX of Plaintiffs’ amended complaint alleged a claim for joint liability based on the theory of joint ownership. The trial court dismissed this count concluding that, as a matter of law, Orlando Health could not be a “beneficial” owner since non-profit hospitals do not have owners. However, the exhibits attached to the amended complaint (referenced above) *1238 support Plaintiffs’ joint-liability theory. As such, dismissal of this count was error.
The amended complaint further averred the following facts as grounds for establishing vicarious liability against Orlando Health based on its employment relationship with South Lake Hospital’s CEO and three members of the hospital’s board of directors:
OH was given three (3) of the six (6) board of director seats of defendant SLHI, along with the authority to hire and terminate the hospital’s Chief Executive Officer (CEO), a position exclusively reserved for OH to fill; a position at all times material hereto, held by an OH employee;
[[Image here]]
Further, by reserving the CEO position, and therefore, the President of SLHI’s position for itself, and by reserving three (3) of the six (6) SLHI Board of Director positions, defendant OH undertook to assume oversight and control over the credentialing process, and the ultimate granting of privileges at South Lake Hospital.
[[Image here]]
At all times material hereto, the three (3) OH employees, and the three (3) SLMH employees, accepting appointments to fill, and in fact filling, the six (6) SLHI Board of Director seats (three (3) being reserved for OH employees, and three (3) being reserved for SLMH employees), were acting in the course and scope of their agency relationship with OH and SLMH, respectively.
At all times material hereto, the CEO of defendant SLHI, employed by defendant OH, was acting in the course and scope of her employment relationship with defendant OH.
Upon information and belief, sometime in the year 2000, defendant HAGEN
submitted for approval his application to be credentialed at South Lake Hospital. Such application was reviewed, and an investigation of his background was undertaken, and ultimately, his application was recommended for acceptance, whereupon at the highest levels of governance of South Lake Hospital, including oversight by three (3) of the six (6) SLHI Board of Directors, each an OH employee, HAGEN’s application was approved “without conditions.”
Count X of Plaintiffs’ amended complaint alleged a claim for vicarious liability as follows:
VICARIOUS LIABILITY OF DEFENDANT OH FOR THE NEGLIGENT ACTS OF IT EMPLOYEES
[[Image here]]
At all times, material hereto, the three (3) OH employees, and the three (3) SLMH employees, accepting appointments to fill, and in fact filling, the six (6) SLHI Board of Director seats (three (3) being reserved for OH employees, and three (3) being reserved for SLMH employees), were acting in the course and scope of their agency relationship with OH and SLMH, respectively.
At all times material hereto, the CEO of defendant SLHI, employed by defendant OH, was acting in the course and scope of her employment relationship with defendant OH.
The trial court summarily held that dismissal of Count X was warranted because Orlando Health cannot be held vicariously liable for the actions taken by the hospital’s CEO and board members. Plaintiffs challenge the court’s ruling, arguing that the record is undisputed that the CEO and three board members of South Lake Hospital are employed by Orlando Health and that, as a result, Orlando Health can be held vicariously liable for negligent acts committed by said employees. They cite *1239 to the fact that the amended complaint expressly alleged that South Lake Hospital’s CEO and board members were directly involved in negligently extending and renewing staff privileges to Dr. Hagen, and they maintain that Orlando Health failed to conclusively refute the allegation. Orlando Health responds that whether the CEO and the board members were employees of Orlando Health “is irrelevant” because, when making decisions relating to South Lake Hospital issues, they were not working within the course and scope of their employment with Orlando Health. However, Orlando Health fails to cite to any portion of the instant pleading to support this claim of fact. Accordingly, on the state of the instant pleading, the trial court erred in dismissing Count X because neither the amended complaint nor any exhibit to the amended complaint establishes that Orlando Health’s employees were not working within the course and scope of their employment with Orlando Health while also working for South Lake Hospital.
REVERSED and REMANDED.
TORPY, C.J., and JACOBUS, B.W, Senior Judge, concur.

. Although the case is still pending below with other defendants, we have jurisdiction because the instant order disposed of the entire case as against Orlando Health. See Fla. R. App. P. 9.110(k).