# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-1596
LT Case No. 2015-CA-001089-A

_____

ORLANDO HEALTH, INC. f/k/a
ORLANDO REGIONAL
HEALTHCARE SYSTEM, INC.,

      Appellant,

      v.

MARK R. MOHAN, ROHINI
BUDHU, SOUTH LAKE HOSPITAL,
INC., JORGE L. FLORIN, M.D.,
P.A., d/b/a MID-FLORIDA
SURGICAL ASSOCIATES, and KARL
M. HAGEN, M.D.,

      Appellees.

_____


On appeal from the Circuit Court for Lake County.
Dan R. Mosley, Judge.

Michael R. D'Lugo, of Wicker Smith O'Hara McCoy & Ford, P.A.,
Orlando, for Appellant.

Eric H. Faddis, of Law Offices of Eric Faddis, Maitland, and
Steven G. Mason, of Steven G. Mason, P.A., Altamonte Springs,
and W. Riley Allen, of Riley Allen Law, New Smyrna Beach, as
co-counsel for Appellees, Mark R. Mohan and Rohini Budhu.

No Appearance for Remaining Appellees.

May 24, 2024

HARRIS, J.

Orlando Health, Inc. f/k/a Orlando Regional Healthcare System Inc. ("Orlando Health") appeals the trial court's order granting Appellees', Mark R. Mohan and Rohini Budhu (husband and wife), Motion for Leave to Amend Complaint to Assert a Claim for Punitive Damages. Orlando Health argues that the trial court erred in granting the motion because there is no record evidence that anyone affiliated with Orlando Health or any managing agent of Orlando Health engaged in intentional misconduct or in gross negligence, nor is there any record evidence to support a claim of vicarious responsibility. Orlando Health also argues that the trial court erred in denying its Motion to Strike Appellees' Punitive Damages Outline, Including Relevant Proffer Experts. For the reasons set forth below, we reverse the trial court's order granting Appellees' motion for leave as to Count Fifteen and affirm in all other respects.

In Appellees' fifth amended complaint, they alleged medical malpractice after Karl M. Hagen, M.D. performed an appendectomy procedure on Mohan to remove his inflamed appendix on May 8, 2011. When the hospital pathologist performed a perfunctory examination on the specimen, he discovered that the surgeon removed Mohan's healthy, right ureter instead, leaving the inflamed appendix behind. The pathologist alerted the surgeon of the mistake and three medical procedures were necessitated thereafter, including removing the inflamed appendix, a procedure to place a nephrostomy tube into the remaining portion of the ureter so that the kidney would drain properly, and another procedure to reconstruct Mohan's bladder in order for it to be reconnected to what was left of the damaged, severed ureter.

The fifth amended complaint alleged that Orlando Health undertook the governance of South Lake Hospital ("SLH") and had the authority to hire and terminate the hospital's Chief Executive Officer. It alleged that Orlando Health undertook to assume oversight and control over the credentialing process, and the ultimate granting of privileges at SLH. It further alleged that for

2

many years preceding Mohan's surgery at SLH, Dr. Hagen was involved in several adverse incidents, which called Dr. Hagen's competence and qualifications into question. Dr. Hagen was the subject of several malpractice suits and prosecutions by the Secretary of the Department of Health and State of Florida and by the State of California's Medical Board. The State of Florida prosecuted Dr. Hagen in October 2006 for wrong-site surgery resulting in the patient's death, and in October 2007, for multiple failures to meet the required standard of care resulting in a patient's death. These same circumstances led to an investigation by the State of California's Medical Board, and thereafter that Board revoked Dr. Hagen's license.

The complaint further alleged that despite the malpractice lawsuits, prosecutions, substantial number of adverse incidents, and Dr. Hagen's known propensity as a heavy alcohol consumer while on call, Orlando Health ignored Dr. Hagen's conduct and continued to grant medical staff privileges to him without conditions. As a result of Orlando Health's failure to provide appropriate oversight and governance to the credentialing and privileging process at SLH, Dr. Hagen operated on Mohan and performed a wrong-site surgery.

The complaint further alleged that in the weeks following the wrong-site surgery, Orlando Health (also referred to as the hospital's governance) conducted an investigation during which Dr. Hagen's privileges were suspended. During this process, Dr. Hagen admitted culpability for the incident and that he had a drinking problem. Orlando Health concluded that Dr. Hagen's drinking problem was the reason for the wrong-site surgery performed on Mohan, and Dr. Hagen was forced to resign his privileges permanently at SLH.

In September 2022, Appellees sought to amend their complaint to add a claim for punitive damages, arguing that the evidence provided a reasonable basis for recovery of such damages resulting from Dr. Hagen's conduct in performing a wrong-site surgery and Orlando Health's conduct in being actively and knowingly involved in the repeated reappointments of Dr. Hagen. The motion asserted that prior to Mohan's surgery, Dr. Hagen was involved in several instances of untoward and incompetent

misconduct which had endangered patients' safety, resulting in multiple administrative prosecutions by the State of Florida and serious injury and death of several patients. The motion alleged that Dr. Hagen suffered from alcoholism and acknowledged his own propensity to unsafely speed through surgical procedures, such that he was known amongst his peers by the nickname "Speedy Hagen." The motion argued that Orlando Health owned SLH, owned and controlled its subsidiary corporate entity South Lake Hospital, Inc. and its partner, South Lake County Hospital District, and employed SLH's CEO, and thus, Orlando Health was actively and knowingly involved in the re-appointment and re-credentialing of Dr. Hagen and did so despite its actual knowledge of Dr. Hagen's untoward and incompetent misconduct.

Appellees' motion further cited to the affidavit of their expert, Stephen John Ferzoco, M.D., who stated in part:

A. In all the years of my practice, I have never seen a more egregious case of both a physician's incompetence, and the governing authority's dereliction of duty as was presented to me in the circumstances of this case.

B. Ureteral injury during an open appendectomy procedure never occurs, and it would be reckless for a General Surgeon to have mistaken a ureter for the appendix. This is a classic case of a wrong site surgery, and no justifiable basis exists for doing so.

. . . .

Y. The most likely explanation for the governing body to have continued Dr. Hagen's appointment to the staff of South Lake Hospital, despite the staggering numbers of his involvement in adverse incidents, is that the governing authority's decision making was flawed, as it allowed Dr. Hagen to maintain his privileges based upon political connection and/or favoritism, rather than on the merits, a

4

recognized occurrence, unfortunately, which does occur on occasion in the setting of hospital institutions, and one prominently warned against within the Hospital's organizational documents, the governing authority's Board of Director, ByLaws, which reads in pertinent part:

"[the governing authority shall m]ake appointments on the basis of merit, and not because of political connection or favoritism" (FF00687-FF-00694)

Appellees also cited to the affidavit of Arthur S. Shorr, LFache, a hospital administrator expert, who opined that Orlando Health controlled the governance of SLH and was therefore responsible for all activities occurring at SLH. Both experts opined that the hospital's governing authority's conduct in failing to reject, terminate, or revoke Dr. Hagen's medical privileges well before May 8, 2011, was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of Mohan, who was exposed to such conduct.

On September 9, SLH filed a motion for judgment on the pleadings which was directed, in part, as to Count Fourteen of the fifth amended complaint which alleged negligent credentialing against SLH. SLH argued that Count Fourteen was improper as a matter of law because SLH admitted that Dr. Hagen was its employee at the time of the surgery, was acting within the course and scope of his employment, and that it was vicariously liable for Dr. Hagen's alleged negligence. Consequently, Appellees' only valid claim against SLH was respondent superior for Dr. Hagen's alleged negligence, which was alleged in Count Four of the fifth amended complaint. The trial court granted the motion on February 23, 2023, thus, there was no longer a claim for negligent credentialing against SLH.

On March 10, 2023, five days prior to the hearing on the motion to amend, Appellees filed their First Amended Punitive Damages Argument outline, Including Relevant Proffer Excerpts. The proffer included the deposition testimony of Dr. Hagen and minutes from the medial executive committee's meetings

5

regarding Dr. Hagen's resignation and the decision to revoke his privileges. The proffer also included governing documents that indicated that Leslie Longacre, Orlando Health's employee and CEO of SLH, was legally required to manage hospital staff and recommend approval to the Board of every applicant, including Dr. Hagen. Appellees further proffered a portion of the deposition transcript of Longacre, who testified that she did not recall ever receiving any information that Dr. Hagen drank too much or was known to speed through his surgical procedures, and that if she had discovered that information, she would have asked for reviews and it would have been a top priority for her.

The court held a hearing on Appellees' motion for leave to amend their complaint on March 15, 2023, and on March 29, 2023, entered its order granting Appellees' motion. The court noted that Appellees conceded that they do not assert application of the provisions under section 768.72(3)(a) or (b), Florida Statutes, which would implicate proof of a "knowing," "willful," and/or "malicious" nature. Among the proffered expert testimony that the court relied upon in allowing the claims for punitive damages was Ferzoco's affidavit testimony that the 50 plus adverse medical incidents involving Dr. Hagen supported a conclusion that the governing authority at SLH should have rejected Dr. Hagen's application for re-appointment.

The court also cited to Longacre's deposition wherein she testified that she was involved with the process of review of each physician's credentialing and/or reappointment, as she was the "governing manager" of all medical staff committees at the hospital. The court further cited to Longacre's testimony in which she directly stated that she was involved in the credentialing process and that the credentialing committee, which is supervised by her, would review adverse incidents involving the physician seeking to be credentialed. Any adverse instances would be placed in a report generated by the medical quality committee, of which Longacre oversaw, and then Longacre would decide whether further action is necessary.

The court found that there was evidence in the record that Longacre was intimately involved in the credentialing/re-appointment process, and concluded that there was sufficient

6

evidence of gross negligence perpetrated by both Dr. Hagen and Longacre under the umbrella of Orlando Health, either as a joint partner, venture, enterpriser, owner, or as the principle of its subsidiary agent, SLH. Finally, the court concluded that Appellees met the procedural requirements for pleading punitive damages by presenting a reasonable showing of evidence either proffered or filed of record. This appeal followed.

We review de novo the trial court's decision regarding whether a party should be allowed to plead punitive damages. *Wayne Frier Home Ctr. of Pensacola, Inc. v. Cadlerock Joint Venture, L.P.*, 16 So. 3d 1006, 1009 (Fla. 1st DCA 2009). "In evaluating the sufficiency of the evidence proffered in support of a punitive damages claim, the evidence is viewed in a light favorable to the moving party." *Id.*

A party wishing to pursue punitive damages must first file a motion seeking leave of court to file an amended complaint and then make "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat; *see also* Fla. R. Civ. P. 1.190(f). "[W]hen entertaining a motion to amend an order to add a claim for punitive damages, the trial court must first consider whether the proposed amended complaint actually sets forth a claim that the defendants' conduct was grossly negligent, as defined by statute." *Varnedore v. Copeland*, 210 So. 3d 741, 745 (Fla. 5th DCA 2017). "If the proposed amended complaint contains sufficient allegations of gross negligence, the trial court must next consider whether plaintiff has established a reasonable factual basis for its punitive damage claims." *Id.* at 746.

Orlando Health argues that there is insufficient evidence of intentional misconduct or gross negligence to support a claim for punitive damages. It also argues there is no evidence that it had any involvement in the credentialing process at SLH, and that the trial court erred in finding Longacre was a managing agent of Orlando Health.

Regarding Orlando Health's argument that it was not involved in the credentialing process, this Court has already held that Appellees presented sufficient evidence to plead that Orlando

Health was involved in the credentialing process. *See Mohan v. Orlando Health Inc.*, 163 So. 3d 1231, 1235 (Fla. 5th DCA 2015). In that case, Appellees appealed the partial final judgment entered by the trial court against them on all of their claims against Orlando Health. *Id.* The trial court found that Orlando Health was not liable for the CEO and SLH board member's conduct in credentialing Dr. Hagen and as a result, granted Orlando Health's motion to dismiss all claims against it with prejudice. This Court reversed the trial court's order, and rejected Orlando Health's argument that "South Lake, not Orlando Health, was solely responsible for all decisions related to the medical staff and credentialing." *Mohan*, 163 So. 3d at 1234. This Court cited to the Managing Agreement, which states that "ORHS shall be responsible for all day-to-day management of the Hospital, including . . . personnel (including selection, testing, training, and education of personnel.)." *Id.* at 1235. We continue to reject Orlando Health's argument that it was not involved in the credentialing process.

Notably, in this appeal, the trial court cited to the CEO's deposition testimony wherein Longacre testified that she works "with the medical staff in the credentialing process of all physicians" and supervises the groups of individuals that are responsible for preparing the credentialing information. She agreed that she was responsible for making sure that the quality committee met and followed the protocols and procedures that governed their activities. She had the power to temporarily suspend a physician for conduct that would compromise patient safety.

We find that there is sufficient evidence that Longacre, appointed by Orlando Health, was intimately involved in the decision to re-credential Dr. Hagen. Thus, the only issue that remains is whether Appellees established a reasonable factual basis for their punitive damage claims, and we conclude that Appellees' proffer and the record evidence support a claim for punitive damages. Because Appellees do not allege intentional misconduct (that Orlando Health or its managing agent knowingly or intentionally pursued the re-appointment of Dr. Hagen with the actual knowledge of a high probability that injury or damage would occur), their complaint focuses on gross negligence.

8

(1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. . . .

(2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

. . . .

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

(3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

. . . .

(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

§ 768.72, Fla. Stat. (2023).

Appellees' expert's affidavits characterized the conduct in re-appointing Dr. Hagen as so reckless or wanting in care that it

9

consisted of a conscious disregard or indifference to the life, safety, or rights of patients. Further, Longacre testified that if she had known about Dr. Hagen's issues with alcohol and his propensity to speed through surgical procedures, an investigation into such conduct would have been her top priority. The evidence and testimony proffered by Appellees meets the threshold provided by the statute, and thus the trial court did not err in allowing the complaint to be amended to add the claims for punitive damages.

However, Orlando Health correctly argues that since the trial court granted SLH's motion for judgment on the pleadings as to the count of negligent credentialing against SLH, and because Dr. Hagen was an employee of SLH, Orlando Health cannot be held liable in any fashion for compensatory or punitive damages based upon the alleged negligent credentialing of Dr. Hagen. *See Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158, 1159 (Fla. 1995) (noting that because managing agent, who was exonerated for the claim of maliciousness in the commission of fraud, punitive damages liability for employer was prohibited for same conduct). Count Fifteen of Appellees' sixth amended complaint alleges that Orlando Health is liable for the negligence of SLH under the theory of respondeat superior. Count Fifteen specifically alleged that, "[a]s the principal, master, and/or employer of SLHI, [Orlando Health] is vicariously liable for the fault of SLHI as specifically alleged in Count [Fourteen.]"

"[W]hen a principal's liability rests solely on the doctrine of respondeat superior, a principal cannot be held liable if the agent is exonerated." *Buettner v. Cellular One, Inc.*, 700 So. 2d 48, 48 (Fla. 1st DCA 1997). Thus, because the court granted SLH's motion for judgment on the pleadings as to Count Fourteen, Appellees' punitive damages claim in Count Fifteen cannot stand. No claim for punitive damages can exist if the underlying claim cannot exist. *See Keen v. Jennings*, 327 So. 3d 435, 439 (Fla. 5th DCA 2021) (noting claim for punitive damages "is auxiliary to, and dependent upon, the existence of an underlying claim").

Accordingly, we affirm the trial court in all respects, with the exception of the order authorizing punitive damages on Count Fifteen, and we remand this matter for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; REMANDED.

EDWARDS, C.J., and BOATWRIGHT, J., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____